### No. 36,860

In the Matter of the Estate of David A. Fawcett, Deceased. (LEORA E. FAWCETT, Widow of David A. Fawcett, Deceased, *Appellee*, v. WILLIAM FAWCETT, Executor of the Will of David A. Fawcett, *Appellant.*)

(183 P. 2d 403)

ORA D. McCLELLAN, judge. Opinion filed July 12, 1947.

*Harry K. Allen,* of Topeka, argued the cause, and *L. M. Ascough,* of Topeka, and *D. H. Forbes,* of Neodesha, were with him on the briefs for the appellant.

*Elmer W. Columbia, John B. Markham* and *Herman W. Smith, Jr.,* all of Parsons, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an application by a widow asking that the property occupied by her and her husband as a residence at the time of his death be set aside to her as a homestead. She also asked for certain statutory allowances. This application was denied in the first instance by the probate court. On appeal to the district court the application was allowed. The executor has appealed.

Both parties had been married before. She had one son by a former marriage. He had three sons and a daughter. The husband and wife had been living together in the residence in question at the

time of the husband's death. The question at issue turns upon an interpretation of the husband's will and the wife's consent thereto. It will be set out here in full as follows:

"I, David A. Fawcett, residing at 923 Osage Street, in the city of Neodesha, county of Wilson, state of Kansas, being of lawful age, of sound and disposing mind and memory, and not under any restraint, do hereby make, publish and declare this to be my last will and testament; hereby revoking any and all former wills by me made. This will is intended by me and by my wife, Leora E. Fawcett, to be irrevocable and to serve as a full and final settlement of all our mutual property interests upon my death or her death. In the event my wife, Leora E. Fawcett, should die before my death, then and in that event the part of my estate which is to pass to her upon my death under this will shall be and is hereby given to her only child, Clyde Basey, to be paid to him by my executor on my death from my estate.

"First: I direct that my just debts, funeral and burial expenses, be paid by my executor from my estate.

"Second: I give, devise and bequeath to my son, J. Loran Fawcett, the sum of One Dollar ($1.00).

"Third: I hereby give, devise and bequeath to my wife Leora E. Fawcett, all the household goods, furniture and equipment which may be owned by me and in my house at the time of my death.

"Fourth: I give, devise and bequeath to my wife, Leora E. Fawcett, and to my three children, viz: William Fawcett, now residing on the corner of Eighth and Osage Street, city of Neodesha, Kansas; Harold Fawcett, now residing at Colorado Springs, Colorado; and Velma Laverty, now residing at rural Neodesha, Kansas, each an undivided one-fourth interest in all the rest and residue of my estate, share and share alike, except that my wife's one-fourth share in and to the residue of my estate shall not be less than Eight Thousand Dollars ($8,000.00), and in the event that her undivided one-fourth interest in the rest and residue of my estate does not amount to Eight Thousand Dollars ($8,000.00) then the interests of the three children named in this paragraph shall be equally reduced and added to my wife's share so that my wife does receive the said sum of Eight Thousand Dollars ($8,000.00), the said amount to be in addition to any and all other bequests made by me to her in this will. In the event that any of my three children, viz: William Fawcett, Harold Fawcett and Velma Laverty, should die before my death, then, in that event, the interest which he would have received in my estate under this will, I hereby give and devise to the children, then living, of the said child or children that died before my death.

"Fifth: I hereby request and instruct the executor of this my will to give my wife, Leora E. Fawcett, should she survive me, the first privilege to purchase my present residence property located at 923 Osage Street, Neodesha, Kansas, at the value placed thereon by the appraisers of my estate.

"Sixth: I hereby nominate and request the court to appoint William Fawcett, now of Neodesha, Kansas, as executor of this my last will and testament.

"Witness my hand at Neodesha, Kansas, this ——— day of December, 1944."

Attached to the will was an election to take under the will signed by the widow. It read as follows:

"The undersigned, Leora E. Fawcett, the wife of David A. Fawcett, having read the foregoing will of said David A. Fawcett, and having had independent advice thereon, and being well informed of the contents thereof and the provisions made for her therein and her rights under the laws of the state of Kansas hereby consents to the provisions contained therein for her benefit, and expressly consents that the said David A. Fawcett may bequeath away from her more than one-half of his property and hereby elects to take under said will.

"Dated at Neodesha, Kansas, this —— day of December, 1944."

The will to which the above election was attached was duly admitted to probate.

The application upon which this proceeding was based was called "Application of Leora E. Fawcett, widow, for widow's allowance." It stated that she was the surviving widow of deceased; that under the provisions of G. S. 1945 Supp. 59-401 and 59-403, she was entitled to have set aside to her the residence occupied by deceased and herself at the time of his death, certain carpenter, yard and garden tools, the family automobile and $750 in cash. The application prayed that all this be set aside to her.

The executor of the estate answered that the terms of the will clearly showed the testator's intention to make other provisions for his wife than were provided by G. S. 1945 Supp. 59-401 and 59-403, which benefits she accepted and ratified by executing the consent to the will and by filing a consent to take under the will after the will was admitted to probate; and that the will and the consent thereto were in fact a contract between the parties.

The prayer of this answer was that the application be denied.

The probate court found that it was the clear intention of the testator to make other provisions for the widow in the will in lieu of her homestead and statutory rights and that the application should be denied. On appeal the parties stipulated as to the marriage of testator and Mrs. Fawcett; that he died leaving applicant as his surviving widow; that prior to his death the parties maintained their home on the property in question and that since his death the widow had continued to live on the premises.

The trial court found that Leora E. Fawcett was entitled to the homestead and statutory rights as provided by G. S. 1945 Supp. 59-401, 59-403 and 59-404. Judgment was entered that the real estate in question should be set aside as the widow's homestead to

remain her homestead until her death and that there be set aside to her the carpenter tools, household goods, the automobile and that $750 be paid to her by the executor within a reasonable time. The executor has appealed. His sole specification of error is that the trial court erred in sustaining the application of the widow.

All parties agree that, had there been no will or had the widow not consented thereto or agreed to take under it she would have been entitled to an undivided one-half interest in his estate and to a homestead right in the real estate in question and to the statutory allowances. There was a will, however, and the widow did consent to it. The widow relies in the main on G. S. 1945 Supp. 59-404. That section follows 59-401 and 59-403, one of which gives the widow her homestead rights and the other grants the statutory allowances of personal property. Section 59-404 provides as follows:

"The surviving spouse, by electing to take under the will of decedent or by consenting thereto, does not waive the homestead right nor the right to such allowance, unless it clearly appears from the will that the provision therein made for such spouse was intended to be in lieu of such rights."

There are certain limitations on the testamentary power. Thus, either spouse may will away from the other one-half of his property subject to the rights of homestead and allowances secured by statute, but neither spouse may will away from the other more than one-half of his property subject to such rights and allowances unless the other shall consent thereto in writing executed in the presence of two or more competent witnesses or shall elect to take under the testator's will as provided by law. (See G. S. 1945 Supp. 59-602.)

Another statute of interest to us here is G. S. 1945 Supp. 59-603. It provides as follows:

"The surviving spouse, who shall not have consented in the lifetime of the testator to the testator's will as provided by law, may make an election whether he will take under the will or take what he is entitled to by the laws of intestate succession; but he shall not be entitled to both. If the survivor fails to consent or to make an election, he shall take by the laws of intestate succession."

There is no doubt in the case at bar that the widow in the lifetime of the testator consented to the will. The will did give to persons other than the widow more than half of the testator's property. It is impossible for us to say from this record just how much more than one-half because we cannot ascertain the value of the household goods, furniture and equipment, all of which was given to the widow by paragraph three of the will. It is also impossible to say what the advantage to the widow would be from the peculiar pro-

vision of paragraph four, wherein the testator made sure that she would receive at least $8,000 as her share. Outside of the personal property, however, she was given an undivided one-fourth interest in the residue.

Does it clearly appear from the will that the provisions made for the widow were to be in lieu of the rights she had to the homestead and the statutory allowances? As far as the statutory allowances are concerned the question is easily answered in the affirmative since the statute gives her the furniture and household goods, utensils and implements used in the home and one automobile, together with $750 in cash; while testator gave his widow by the will all the household goods, furniture and equipment owned by him and in his house at the time of his death. Outside of the $750 she received by the will just about what the statute gave her.

As to the homestead rights in the real estate occupied by them at the time of the death of the testator, we must examine the will in the light of all the surrounding facts and circumstances.

The wife in the instrument denominated a consent stated that she consented to the provisions of the will for her benefit and expressly consented that the testator might bequeath away from her more than one-half of his property, and she thereby elected to take under the will. What were the provisions for her benefit to which she consented? It will be remembered that at that time she had one son, while the testator had three sons and a daughter, although only three of these were residuary legatees under the will. The will was first declared to be irrevocable and to serve as a final settlement of all mutual property interests upon the death of either. Then we find a provision that in the event the wife should die before the testator the share she would have inherited should go to her son. Without this provision the son would have inherited nothing in case of his mother's death before that of the testator. This provision was really for the benefit of the widow since by it she was able to provide somewhat for the person she would naturally wish to be the recipient of her bounty in case of her death. Then the provision giving her all the household goods, furniture and equipment was for her benefit as well as was the provision as to the residue, whereby she was to receive not less than $8,000 even though it might mean reducing the amount the other residuary legatees were to receive.

The fifth paragraph whereby she was given the privilege to purchase the residence at the value placed on it by the appraisers of his estate was also for her benefit.

The provisions of G. S. 1945 Supp. 59-404 that the provisions of the will must have been intended to be in lieu of the homestead rights, no doubt means intended by the testator and the other spouse, in this case the widow.

We shall not decide whether the will and consent constituted an irrevocable contract between the husband and wife. We have examined the contractual features of the two documents, however, for the bearing they have upon the question of what was intended by the parties when the two documents were executed. The wife may by consent to a will give her husband power to dispose of the homestead and thereby cut off her rights. (See *Burns v. Spiker*, 109 Kan. 22, 202 Pac. 370.) True, that case was decided before the enactment of G. S. 1945 Supp. 59-404, which was section 22 of chapter 180 of the Laws of 1939. However, the rule at that time as to the right of one spouse to dispose of the homestead by will where the other spouse had consented to the will was substantially the same as is now provided in the present probate code. In *Burns v. Spiker*, supra, we said:

"Upon weighing all these considerations the court adopts the view that by a will to which his wife consents in writing in the presence of subscribing witnesses a husband may dispose of all his property, including that occupied as a family residence, and thereby cut off the right of the widow to continue in its occupancy; and that such a will which in general terms bequeaths and devises to persons named all his property without specifying any items, and without making any exceptions or reservations, is to be construed as intended to have that effect." (p. 31.)

The will in this case is even more favorable to the wife than was the will in *Burns v. Spiker*, supra.

Counsel for the wife attempt to distinguish this case from *Burns v. Spiker* by pointing out that there was an antenuptial contract in that case while in this case there was no such contract. As we have pointed out, there were some contractural features in the present will. However, we do not place the decision on that ground. We only point out the contractural features as elements to be considered as bearing on what the parties intended. The opinion in *Burns v. Spiker*, supra, leaves no doubt that the result would have been the same had there been no contract.

The judgment of the trial court is reversed with directions to proceed according to the views expressed in this opinion.

HOCH, J., not participating.