No. 38,807

In the Matter of the Estate of Albert Frank Elliott, Deceased. VORRAS ELLIOTT, VONDA MILLER and AVIS FLORY, *Appellants* and *Cross-appellees,* v. ABBIE ELLIOTT, *Appellee* and *Cross-appellant.*

(255 P. 2d 645)

Opinion filed April 11, 1953.

*John K. Bremyer*, of McPherson, argued the cause and was on the briefs for the appellants and cross-appellees.

*L. H. Ruppenthal*, of McPherson, argued the cause and was on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

PRICE, J.: This case involves a dispute between a widow and her stepchildren over the disposition of the proceeds of a tornado insurance policy covering the farm home of their deceased husband and father. All parties have appealed from the judgment below.

Albert Frank Elliott, a widower, lived on his 160-acre farm near McPherson. He and his deceased wife were the parents of three adult children (appellants and cross-appellees), hereinafter referred to as the children. Each of the children is married and has a home of his or her own.

Abbie Davidson (now Abbie Elliott, appellee and cross-appellant), a widow, lived on a three-acre tract, owned by her, near McPherson. She was the mother of three adult children.

On March 8, 1950, Albert and Abbie were married. On the next day they simultaneously executed separate wills. Her will devised and bequeathed all of her property to her own children. Albert consented to the provisions of her will.

Albert's will, after directing the payment of all indebtedness, provided:

"Second. I give, devise and bequeath all of my real estate wheresoever located and wheresoever situated unto my three children, Vorras A. Elliott, of Schenectady, New York, Vonda Ione Miller of McPherson, Kansas, and Avis Aleta Flory of Wichita, Kansas, share and share alike.

"Third. All the rest, residue and remainder of my estate I give and bequeath unto my wife, Abbie Elliott."

A son-in-law was named as executor. Abbie's written consent, duly witnessed, to Albert's will, reads:

"I, Abbie Elliott, wife of Albert Frank Elliott, who signed, declared and published the foregoing instrument as his last will and testament, do hereby declare that I have read the same and understand the provisions therein contained and the rights secured to me by law; and I hereby consent to the said will and accept the provisions therein made for me in lieu of the rights secured to me by law."

Following their marriage they lived on Albert's farm which, by his will, was devised to his three children, share and share alike. This was the only real estate owned by him. The home and other buildings on the farm were covered by a policy of tornado insurance. Shortly after their marriage Albert renewed the policy and increased the coverage by $2,000, making a total of $8,150. The policy contained the standard provision which allowed the company to rebuild at its option.

Their marriage was cut short, however, by a devastating tornado which struck the area the evening of June 8, 1950. The home and other buildings on the farm were completely destroyed. Albert and Abbie were found in the debris about midnight. He died the next noon as the result of his injuries. She (hereinafter referred to as the widow), although injured, survived.

Albert's will was admitted to probate and the estate was regularly administered by the executor. The insurance company paid to the executor the full amount of the policy. The petition for final settlement set forth that the executor

". . . is unable to determine whether said $8150.00 is to be considered as real or personal property and whether or not it is to be considered under the doctrine of equitable conversion, and by reason thereof it will be necessary for this court to determine whether said sum of $8150.00 should be assigned to . . ."

the children or to the widow under the provisions of the will.

To this petition the widow filed her written defenses in which she denied there was any valid question of law or fact with respect to the proper disposition of the insurance proceeds, and alleged that as of the moment of testator's death he had a "claim" against

the insurance company which constituted a part of his residuary estate bequeathed to her by paragraph three of his will, heretofore quoted.

The probate court found that the insurance money should be considered as a part of the real property of the estate, that is, as payment for destruction of real property, and assigned it, together with the real estate, to the three children, share and share alike.

From that ruling the widow appealed to the district court.

The findings and judgment of the district court, set out in the journal entry, read:

"Mr. Elliott's will is very simple and very clear and plain. He left his real estate, which included these insured buildings, to his three children, and his personal property to his wife.

"These buildings were destroyed before his death and the insurance money was due to be paid to him before he died and hence was money in his estate or due his estate at the time of his death. However, this insurance money was not like the other money he had at the time of death which he might have received from the sale of cattle or crops that he had raised. It was money received for the loss of the homestead which places it separate and apart from any other money he had, as verified and illustrated by the fact that it was not subject to levy or garnishment for any debt he might have and was, in fact, untouchable because it had been paid for the loss of the homestead and stood under the same protection the law gives a homestead.

"This money now stands in the place of and represents the property destroyed and is for the benefit of those interested in this property and no one else, and should be paid to them as their money. It has no place in the general assets of the estate.

"However, the Kansas homestead law gives the use of the homestead to the widow during her lifetime and the life of their children, if any. So, likewise, she is entitled to the use and benefit of this money during her life with the remainder to the three children of Mr. Elliott as named in the will. She can use it to rebuild the property to live in, or the executor as trustee can put it at interest for her use and benefit while she lives.

"So much of the order, judgment, decree and decision of the Probate Court, dated 11 June, 1951, as is in conflict herewith is reversed and the Probate Court is directed to proceed in accordance herewith."

The children filed motions to strike the fourth paragraph of the above quoted portion of the journal entry and for a new trial.

The widow filed a motion to amplify the judgment by adding thereto a direction to the probate court to make an order assigning the real estate to her as a homestead, and to direct that the insurance proceeds be paid out on her order for the purpose of rebuilding a residence on the property for her occupancy under the homestead law. She also filed a motion for a new trial.

All of the foregoing posttrial motions were overruled and all parties have appealed.

With reference to the homestead feature of the case the children contend that as the matter was never raised or injected by any of the parties in either court the district court had no jurisdiction or authority to reach out on its own initiative and consider the question. They also argue that by her consent to Albert's will the widow waived her homestead rights, and further contend that by her actions and nonaction in the probate proceedings she waived any homestead rights she may have possessed.

As we view this case the entire question of the widow's homestead rights can be determined from an examination of our pertinent statute and the will itself, including her written consent.

G. S. 1949, 59-404, reads:

"The surviving spouse, by electing to take under the will of the decedent or by consenting thereto, does not waive the homestead right nor the right to such allowance, unless it clearly appears from the will that the provision therein made for such spouse was intended to be in lieu of such rights."

In *In re Estate of Fawcett,* 163 Kan. 448, 183 P. 2d 403, this statute was under consideration and it was said:

"The provisions of G. S. 1945 Supp. 59-404 that the provisions of the will must have been intended to be in lieu of the homestead rights, no doubt means intended by the testator and the other spouse, in this case the widow." (p. 453.)

The question, therefore, is whether it clearly appears from this will and the consent thereto that the bequest of testator's residuary estate to his wife was intended by both of them to be in lieu of her homestead rights.

We think there can be but one answer to the question and that is that it does. As stated by the trial court, the will is very plain and simple. It is clear the testator desired that all of his real estate should go to his three adult children by a former marriage, share and share alike, and that all of his personal property should go to his wife. She, at the same time, executed a separate will giving all of her property to her three children by a former marriage, to the provisions of which he consented. Her consent states that she had read his will, understood its provisions and the rights secured to her by law, that she consented to it, and accepted the provisions therein made for her "in lieu of the rights secured to me by law." Neither the statute nor our decisions require that in order effectively to waive a homestead right the word "homestead" be included in the consent to a will. Except for the use of the word itself it would

be difficult to think of language more clearly expressing the intent of the parties than that found in the will and consent thereto before us.

Without further discussion we hold that any homestead rights she may have had were effectively waived and extinguished by her written consent to the provisions of her husband's will. On the general subject matter see also *In re Estate of Wenzel,* 161 Kan. 545, 170 P. 2d 618, and the April, 1951, issue of the *Kansas Judicial Council Bulletin* at p. 43.

This brings us, therefore, to the only remaining question in the case—do the insurance proceeds go to the children as devisees of the real estate, or is the widow entitled to them as legatee of the residuary estate?

In support of their position the children contend that the intent of their father as expressed in his will is very clear—that they were to receive all of his real estate, that under the circumstances of the case the insurance proceeds stand in place of destroyed real estate, and under the doctrine of equitable conversion are in fact to be considered as realty, citing 19 Am. Jur., Equitable Conversion, § 2, p. 2, and § 19, p. 18, where it is said, respectively:

"Equitable conversion may be defined as that constructive alteration in the nature of property whereby, in equity, real estate is considered for certain purposes as personalty, or vice versa, and is transmissible and descendable as such."

"The doctrine of equitable conversion has been applied where property has been destroyed while insured. In such a case it has been held that there is an involuntary conversion of the property and that the proceeds of the insurance, when paid, represent or stand in the place of the property thus destroyed."

and *Schneider v. Schneider,* 135 Kan. 734, 12 P. 2d 834, where this court said:

"The theory of equitable conversion is a fiction invented by courts of equity to promote justice in carrying out the purposes of the testator, and it should be applied with that purpose in view. (*Bank v. Murray,* 86 Kan. 766, 768, 121 Pac. 1117.) Equitable conversion has been defined to be that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendable as such. It is an application of the axiom that equity regards that as done which ought to be done." (p. 737.)

The widow, on the other hand, contends for the familiar rule that a will speaks as of the death of the testator; that as the buildings were destroyed in Albert's lifetime the insurance money was owing to him when he died and thus was "personalty" which would pass

to her under the residuary clause; that the insurance policy was a personal contract with the insured and not a contract running with the land; that the doctrine of equitable conversion has no application for the reason the "conversion" here was prior and actual, not equitable, and took place in testator's lifetime, and, finally, that the destruction of the improvements in Albert's lifetime resulted in a partial ademption of the devise to the children, citing *In re Estate of Hill*, 162 Kan. 385, 176 P. 2d 515, in which ademption is defined as being the act by which a specific legacy has become inoperative by the withdrawal or disappearance of the subject matter from the testator's estate in his lifetime, and *Taylor v. Hull*, 121 Kan. 102, 245 Pac. 1026, where it was held that in order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death.

Concededly, Albert, having survived the destruction of his home and the other buildings by about fifteen hours, had a "claim" against the insurance company at the moment of his death. In a strict sense of the word that claim would be considered as "personalty" and thus governed by the residuary clause of his will, which, of course, took effect upon his death.

However, we think that under the facts of this case the interpretation and construction contended for by the widow violate the very obvious intent of the testator and general equitable principles. And neither are we able to follow her argument with respect to the involuntary destruction of the buildings during Albert's lifetime constituting a partial ademption of the devise to the children. Certainly no act of his brought about their nonexistence at the time of his death. The devise to the children included the home and other buildings located upon the land. The purpose of the insurance was to protect from loss or destruction of those buildings. The widow had waived any homestead rights she may have possessed. How, then, can it be said that under the circumstances here disclosed she would be entitled to the insurance proceeds which, for all practical as well as equitable purposes, represent destroyed real estate devised to the children? Suppose Albert's death and the destruction of the buildings had been simultaneous, that is, he had been killed when the tornado struck. We doubt that under such a circumstance the widow would seriously contend she was entitled to the insurance. Why, then, under general principles of equity, should the fact he survived for a few hours alter the situation? We are unable to say that it should. The children, as devisees under

the will, are entitled to the insurance proceeds as found and ordered by the probate court.

The judgment of the trial court is therefore reversed with instructions to enter judgment not inconsistent with what has been said in this opinion.