Rock County Savings & Trust Company, Special Administrator, Plaintiff and Respondent, v. London Assurance Company, Defendant: Tyler, Interpleaded Defendant and Appellant.

*October 3—October 30, 1962.*

For the appellant there was a brief and oral argument by *Robert D. Junig* of Beloit.

For the respondent there was a brief and oral argument by *Howard H. Moss* of Janesville.

HALLOWS, J. The proceeds of the policy having been paid into court by the insurer, the question for decision is to whom do these proceeds belong as between Mattie Tyler and the estate of Mary Curry? A fire insurance contract is a personal indemnity agreement for the insureds, the proceeds of which will indemnify them for the loss they might suffer from the risks covered by the policy. The rights of the insureds as against the insurer are determined as of the date of loss. *Kolehouse v. Connecticut Fire Ins. Co.* (1954), 267 Wis. 120, 65 N. W. (2d) 28; *Evans v. Crawford County Farmers' Mut. Fire Ins. Co.* (1906), 130 Wis. 189, 109 N. W. 952; 5 Appleman, Insurance Law and Practice, p. 469, sec. 3335. On this basis the trial court granted one half of the proceeds to the estate of Mary Curry because at the time of the explosion Mary Curry was living and had a cause of action against the insurance company. However, such a rule of law does not necessarily determine the rights

of the insureds between each other when the insurer has paid the fund into court.

The defendant Tyler argues she is entitled to the entire proceeds as the surviving joint tenant of a chose in action, relying on cases dealing with mortgages securing joint notes and cases involving bank deposits. However interesting this question might be, we do not find it necessary to decide whether a fire policy naming two persons insureds without designation of their rights either in the property or the contract created a legal interest which would ripen in case of loss into a joint cause of action with right of survivorship.

We believe the proper disposition of this case rests upon equitable principles. The house and land were owned by Mary Curry and Mattie Tyler as joint tenants with right of survivorship. Mattie Tyler took out fire insurance naming Mary Curry and herself as insureds and paid the premiums thereon. By the nature of this insurance contract the proceeds were to be indemnity for the loss which might be suffered if the house were destroyed or damaged by any of the perils insured against. The proceeds were to stand in lieu of the dwelling if damaged and this would be true regardless of which insured died first. If either insured died prior to the loss, the survivor by virtue of the joint tenancy of the dwelling would be entitled to the full proceeds of the insurance. Should the fact the explosion antedated the death of Mary Curry by a day require that the law of descent of personal property must apply and preclude carrying out the intention of the parties? We think not. The proceeds of the insurance policy should in equity be treated as if they were the dwelling under the doctrine of equitable conversion and the law of joint tenancy applied. In treating the insurance proceeds as a substitute for the damaged property, we do not intimate Mary Curry did not have a legal right to her

share of the insurance funds after the loss and prior to her death. She had the same interests and the same legal rights she had prior to her death in the real estate which included the right to sever the joint tenancy by her own voluntary act of severance. If Mary Curry had lived and had received her share of the insurance proceeds she could have voluntarily used her share and terminated the joint tenancy. It must be pointed out under a standard fire insurance policy that while an insured may have a cause of action for money against the insurer for his damage, this is subject to the option of the insurer not to indemnify in terms of money but to specifically indemnify by repairing, rebuilding, or replacing the property destroyed or damaged with other or like kind and equality within a reasonable time. Sec. 203.01, Stats., Standard Fire Policy, lines 141 to 147. The fact the insurer did not exercise this option and paid the money into court after the death of Mary Curry is of some significance in applying equitable principles to these facts.

In determining the rights of the parties as between themselves to insurance funds, this court has determined such rights on equitable principles. *Kolehouse v. Connecticut Fire Ins. Co., supra; Estate of Johnson* (1921), 175 Wis. 248, 185 N. W. 180. See *Estate of Massouras* (1962), 16 Wis. (2d) 304, 114 N. W. (2d) 449. In a somewhat-analogous case of *Estate of Elliott* (1953), 174 Kan. 252, 255 Pac. (2d) 645, the court held the insurance proceeds received upon the destruction of property were to be treated as if they were the real estate on the theory of equitable conversion and passed to those entitled to receive the real estate under the will of the deceased who survived the destruction of the dwelling by a tornado by one day.

The doctrine of equitable conversion is an ancient one and applied generally in cases of devises under wills and in cases of uncompleted sales of real estate in order to carry

out the intention of the parties which otherwise would have been prevented by death and the laws of descent or by the destruction of the property. We see no reason why the doctrine should not be applied to indemnity proceeds related to real estate held in joint tenancy. In equity a joint tenancy should not be severed in part by an involuntary conversion of such property into personalty by accidental means. The fact it is by the application of legal principles requires the application of the doctrine of equitable conversion. This result is just and gives effect to the intention of the parties and requires a reversal. The defendant not having moved for summary judgment, this court cannot order the granting of a judgment in her favor for the proceeds. This must be done in the trial court.

*By the Court.*—The interlocutory judgment and that part of the final judgment adjudging the plaintiff entitled to $2,500 are reversed, with directions to deny the plaintiff's motion for summary judgment.