No. 50,492

In the matter of the Estate of K. Agnes Burns, Deceased, MARY ELAINE MEYERS, *Claimant-Appellant,* v. LORINE CLARK, Executrix of the will of K. Agnes Burns, *Respondent-Appellee.*

(608 P.2d 942)

Opinion filed April 5, 1980.

*Reid F. Holbrook,* of Steineger, Holbrook, Parks & Fritz, of Kansas City, and *Roy A. Larson,* of Morris, Larson, King, Stamper, & Bold, of Kansas City, Missouri, argued the cause and were on the brief for the appellant.

*John J. Bukaty, Sr.,* and *John J. Bukaty, Jr.,* of Bukaty & Bukaty, of Kansas City, argued the cause and were on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This appeal is from a judgment in the district court denying a probate claim filed by appellant Mary Elaine Meyers. The claim is based upon a claim of title to certain funds used to restore the structure and furnishings of a residence owned by a decedent at the time of her death.

We are confronted at the outset with a motion to dismiss on the ground the appeal was not timely filed. The claim originally was

heard in the district court, probate department, and rejected by an associate district judge in a letter dated May 16, 1978, stating: "The applicable date of appeal will be as of the date of this letter and Mr. Bukaty is directed to draw a journal entry accordingly." A motion for "rehearing" was filed on June 16, 1978. (The motion was one to obtain a new trial.) The written journal entry was filed September 14, 1978. The order denying the motion for rehearing was filed September 15, 1978, and it provided: "For purposes of appeal, the application date shall be the date of receipt of this letter which shall be deemed to be September 18, 1978." The notice of appeal was filed October 6, 1978.

K.S.A. 1979 Supp. 59-2401 in pertinent part appears as follows:

"(*a*) An appeal may be taken *within thirty (30)* days from the date of entry of any of the following orders, judgments, decrees and decisions:

. . . .

"(5) An order allowing, or disallowing, a demand in whole or in part when the amount in controversy exceeds fifty dollars ($50)." Emphasis supplied.

Subsection (*c*) of the statute is also relevant. It reads as follows:

"(*c*) Except as otherwise provided in this section, appeals taken pursuant to this section shall be taken in the manner provided by chapter 60 of the Kansas Statutes Annotated for other civil cases."

K.S.A. 60-259(*b*) provides that a motion for new trial or to amend the judgment must be served not later than 10 days after the entry of judgment.

K.S.A. 60-2103(*a*) in pertinent part provides:

"The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules hereinafter enumerated, and the full time for appeal fixed in this subsection commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: Granting or denying a motion for judgment under subsection (*b*) of K.S.A. 60-250; or granting or denying a motion under subsection (*b*) of K.S.A. 60-252 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; or granting or denying a motion under K.S.A. 60-259 to alter or amend the judgment; or denying a motion for new trial under K.S.A. 60-259."

So it follows that the time for appeal is to be calculated from the *entry of judgment or the entry of the order* denying a new trial. K.S.A. 60-258 provides:

"Entry of judgments be subject to the provisions of section 60-254(*b*) [judgment on multiple claims]. No judgment shall be effective unless and until a *journal entry or judgment form is signed* by the trial judge *and filed* with the clerk of the court." Emphasis supplied.

After considering the foregoing statutes we are of the opinion the appeal was filed within time. The first letter opinion, although setting an earlier time for appeal, required a journal entry to be drawn and filed. K.S.A. 60-258 provides that no judgment shall be effective unless and until a written *journal entry or judgment form is signed by the trial judge and filed with the clerk of the court.* The written journal entry was filed September 14, 1978, and at this time the motion for new trial was pending. The motion was overruled and the order overruling the motion was filed September 15, 1978, setting September 18, 1978, as the date from which the 30 days for appeal was to run. See K.S.A. 60-2103.

There has been some uncertainty since unification of the courts in Kansas as to whether the 30 days for appeal under K.S.A. 1979 Supp. 59-2401 for probate orders can be extended by filing a motion for new trial and similar motions as mentioned in K.S.A. 60-2103(*a*). See Karlin, *Contested Estate Matters After Court Unification,* 48 J.B.A.K. p. 97, 103-104 (1979). Prior to unification this court held that such motions did not extend the time for appeal in probate matters. See *In re Estate of Parker,* 201 Kan. 1, 439 P.2d 138 (1968). There is now a separate section on appeals from orders entered by district magistrate judges which does not apply in our present case. The order was entered in this case by an associate district judge. See K.S.A. 1979 Supp. 60-2103a.

After unification of the courts in 1977 we no longer have a probate court, as such, and all appeals from orders and judgments of a district judge or an associate district judge are to the court of appeals as provided in K.S.A. 60-2102 and 60-2103. This is spelled out in K.S.A. 1979 Supp. 59-2401(*c*) where it is specified appeals taken pursuant to this section "shall be taken in the manner provided by chapter 60 of the Kansas Statutes Annotated for other civil cases."

Accordingly we hold in appeals from judgments and orders in probate cases entered by a district judge or an associate district judge the running of the time for appeal is terminated by a timely motion for rehearing or such other motion as may be enumerated in K.S.A. 60-2103(*a*), and the full time for appeal fixed in K.S.A. 1979 Supp. 59-2401(*a*) commences to run and is to be computed from the date the written order on such a motion is signed by the judge and filed with the clerk of the court.

The appellee's motion to dismiss is overruled and we turn to the merits of this appeal.

The decedent K. Agnes Burns (Burns) was the sister of Harry Butler (Butler). Butler died in 1971. Burns died in 1977. The claimant, Mary Elaine Meyers (Meyers) was a niece of Burns and she filed a claim against the estate of Burns claiming as a creditor for the cost of repairs to the furnishings and residence owned by Burns. The amount of the claim was $16,142.00. This amount was claimed by Meyers to have been paid in the spring of 1971.

The factual basis behind the claimed payment follows: Butler owned the residence in Kansas City, Kansas. Butler and his sister, Burns, were very close during a period of time preceding Butler's death. Burns spent much of her time with her brother and it was her custom to have almost all of her evening meals with her brother in this residence. Butler executed and delivered a deed to the residence to Burns. The deed was not recorded until after Butler died. A fire occurred in the premises on January 1, 1971, and Butler was seriously injured. He died on March 3, 1971. Butler had insured the house and contents. He filed a claim with the insurance company and entered into a written contract with Lloyd Builders, Inc. to repair the house. This was several weeks before his death. Thereafter Butler died and his estate was administered by The Brotherhood State Bank. Butler died intestate leaving as his sole heirs his daughter, Mary Elaine Meyers, and his son, Tom Butler.

A check was issued by the insurance company for fire damage to the house in the amount of $11,700.00. It was made payable to the bank for the estate of Butler and to Lloyd Builders, Inc. as joint payees. This check was later endorsed by the bank to Lloyd Builders, Inc. at the direction of the claimant, Meyers. A second check in the amount of $8,700.00 was issued by the insurance company payable to the bank for the estate of Butler. The $8,700.00 check was deposited in a special account at the bank and was used to pay for refurbishing the house at a cost of $4,442.00. The balance was paid to the estate of Butler. This was done with the approval of Meyers. The $4,442.00 covered such expenses as installing carpet, refinishing and upholstering furniture, moving and cleaning furniture, installing draperies and installing central air conditioning. At that time neither the administrator of Butler's estate nor Butler's heirs asserted any claim

to the insurance proceeds or to the house. The deed to Burns was never questioned. She did record her deed a few days after her brother's death. The Butler estate was closed and the administrator was discharged in 1974. Burns moved into the home and lived there until her death in 1977. She paid the taxes and insurance during the time she lived in the house. The will of Burns was filed for probate in 1977 and the will devised the residence to someone other than Meyers. The Meyers' claim then was filed against the estate of Burns.

Meyers testified that Burns had shown her a prior will devising the house to Meyers and it was upon the belief that the house was to belong to her that she had authorized the proceeds of the insurance policy be used in repairing the fire damage.

The appellant Meyers argues that the fire insurance proceeds belonged to Butler at his death and passed on his death to his heirs-at-law, Meyers and her brother Tom. She further argues that she permitted these proceeds to be used in restoring the premises because of assurances from her aunt that she had willed the house to Meyers. Meyers concludes that this court should declare the property subject to an equitable lien in her favor in the amount of $16,142.00, the amount of the proceeds used to restore the premises. Her brother Tom did not join in the claim but told Meyers she could go ahead and file it.

The cases cited by appellant refer to actions based on quasi-contract, to establish an equitable mortgage, and to recover for unjust enrichment because of mistake and misrepresentation. These cases are not in point. The question we have is who was entitled to the insurance proceeds?

The district court after hearing the case held: (1) That prior to his death Harry Butler authorized the insurance proceeds to be used for the restoration of the residence and its contents; (2) that title to the contents and the premises passed to K. Agnes Burns, his sister, by a general warranty deed issued to her on June 26, 1968, and recorded on March 5, 1971; (3) that the insurance proceeds were never a part of the Butler estate and were contracted by Butler to be used in repairing and restoring the premises for the benefit of his sister, K. Agnes Burns; and (4) that neither Mary Elaine Meyers nor Tom Butler had any claim to the insurance proceeds either then or now. The evidence supports these findings.

We believe the trial court was correct in its judgment. In the case of *In re Estate of Elliott,* 174 Kan. 252, 255 P.2d 645 (1953), an analogous situation presented itself. A tornado had destroyed the farm home of the husband and father. The 160 acres on which the buildings were located had been devised to the children. The husband and wife were caught in the tornado. The husband died the next day. The wife survived. The wife, who was the step-mother to her husband's children, claimed that the devise to the children, including the destroyed buildings, did not carry with it the proceeds of insurance. This court held:

"The devise to the children included the home and other buildings located upon the land. The purpose of the insurance was to protect from loss or destruction of those buildings. The widow had waived any homestead rights she may have possessed. How, then, can it be said that under the circumstances here disclosed she would be entitled to the insurance proceeds which, for all practical as well as equitable purposes, represent destroyed real estate devised to the children? . . . The children, as devisees under the will, are entitled to the insurance proceeds as found and ordered by the probate court." 174 Kan. at 258-259.

See also *In re Thum's Estate,* 329 N.Y.S.2d 760, 69 Misc. 2d 244 (1972).

We are not unmindful of the split of authority which exists in factual situations similar to that set out in *In re Estate of Elliott,* 174 Kan. 252. See Annot., Specific Legacy—Insurance Proceeds, 35 A.L.R.2d 1056.

However, we believe under the facts of our present case none of these authorities are applicable. Butler contracted to use the proceeds to restore the premises before he died. Title to the proceeds of the fire insurance policy in the present case depends upon the intent of the insured, Harry Butler. In the present case his intent is clear. He transferred title to the house and furnishings to his sister during his lifetime. He retained an equitable interest in possession. When he insured this property he did so to protect the premises. After the premises were damaged by fire he arranged with a contractor to repair the fire damage. An agreement to repair was entered into. This shows a clear intent to use the proceeds to restore the premises. When Butler died he had already obligated his estate by agreement to use the proceeds from the fire policy to restore the premises. When a person contracts prior to his death to use the proceeds of a fire insurance policy to repair fire damage to an insured residence and its

contents the intent of such person to restore the premises is clear. For all practical and equitable purposes the insurance proceeds stand in place of the damage to the premises and on death of the person the proceeds go with the premises and not into the estate of the deceased person. The insurance proceeds did not pass at death to Butler's heirs-at-law, and since Mary Elaine Meyers and Tom Butler had no right, title or interest therein the claim of Meyers was properly denied.

Judgment affirmed.