DUCKWALL ET AL. *v.* LEASE ET AL.

[No. 16,106. Filed April 10, 1939. Rehearing denied June 13, 1939. Transfer denied October 3, 1939.]

*Frank V. Dice,* and *Russell J. Wildman,* for appellants.

*Rupe, Brown & Reller, Brown, Reller & Mendenhall,* and *F. G. Shuey,* for appellees.

LAYMON, J.—The facts were stipulated.

Ella Stevenson died testate on April 12, 1927, a resident of the state of Ohio and the owner in fee simple of a tract of real estate situated near Bunker Hill in Miami County, Indiana. The real estate involved here was the only tract of land owned by Mrs. Stevenson near Bunker Hill, Indiana. Her will was probated on April 20, 1927, in the Probate court of Preble County, Ohio, and was duly probated as a foreign will in the Miami Circuit Court of Indiana on October 7, 1935. By the terms of her will she gave to her husband, G. Curtin Stevenson, her personal property, designated as "all chattels, moneys in the bank and out of the bank, all bonds and whatsoever else of value I may possess not otherwise herein specified," and by Item 2 provided: "that my said husband,

G. Curtin Stevenson, during his life, shall assume the full management and shall have the full use and benefit of all proceeds accruing from and on my farm situated near Bunker Hill, in the County of Miami, and State of Indiana, and at his demise, I direct that the said farm shall be sold and the proceeds divided equally, share and share alike, between my sister Cora Lease of the village of West Manchester, State of Ohio, and H. A. Duckwall of the city of Elkhart, State of Indiana." H. A. Duckwall was a brother of the testatrix, and he and the sister named in her will preceded the testatrix in death. Ella Stevenson left no father, mother, child or children, or the descendants of any child or children surviving her, but left only her husband, G. Curtin Stevenson.

G. Curtin Stevenson, named as executor of the last will and testament of said Ella Stevenson, qualified as such and served until the time of his death. He died testate, a resident of Preble County, Ohio, and his will was duly probated on February 9, 1933, in the Probate Court of said Preble County, and was afterwards, on October 7, 1935, probated as a foreign will in the Miami Circuit Court of Indiana. By the terms of his will he bequeathed and devised to his wife, Ollie Stevenson, "one thousand dollars in addition to the five hundred dollars allowed her by law." The balance of his estate was to be divided among his nieces and nephew as follows: "Madge Stevenson, Viola Stevenson, Mary A. Francisco, and Josaphene Duckwall, each to receive one-fifth of my estate and the other fifth shall be divided equally between my nephew Ralph Stevenson and Mabel Stevenson Ross, son and daughter of my brother D. B. Stevenson, dec., thus leaving but five shares to be divided. It is my will that if either of the above named shall precede me in death that they die without heirs, their share shall be divided between those that are

living." John M. Wehrley was named as executor and qualified and is now acting as such.

The only heirs at law of H. A. Duckwall were his children, Earl Duckwall, Ray Duckwall, Ralph Duckwall, Lewis Duckwall, May Bourne, and Elizabeth Moon. The sole heirs at law of Cora Lease were her children, Leon B. Lease and Mary Francisco.

G. Curtin Stevenson, as surviving husband of said Ella Stevenson, did not elect to take under the law, nor did he reject the provisions made for him under the terms of her will.

Sherman Duckwall, a brother of said Ella Stevenson, preceded her in death and left as his sole and only heirs at law his children, Helen Stewart, Esther Duckwall, and Josephine Duckwall. John W. Duckwall is a surviving brother of said Ella Stevenson.

The General Code of the State of Ohio (section 10581) provides in effect that a devise or legacy to any relative does not lapse by reason of the death of the devisee or legatee before the death of the testator.

Appellants, as the heirs of H. A. Duckwall, deceased (legatee under the will of Ella Stevenson), instituted this action to partition the real estate situated in Miami County, Indiana, of which said Ella Stevenson died seized the owner in fee simple and to quiet their title thereto. To appellants' complaint, which was in one paragraph, appellees answered in general denial. Appellee John M. Wehrley, executor of the estate of G. Curtin Stevenson, deceased, filed a cross-complaint. Appellees Josephine Duckwall, Madge Stevenson, Viola Stevenson, Ralph Stevenson, and Mabel Stevenson Ross also filed a cross-complaint upon the theory that the devise to Cora Lease, a sister, and H. A. Duckwall, a brother, lapsed, because both preceded the testatrix in death and the real estate passed to G. Curtin Stevenson, surviving husband of the testatrix, as in case of intestacy, and that

upon his death, the devisees and legatees of said G. Curtin Stevenson became the owners of the land in controversy as tenants in common. Answers in general denial were filed to the cross-complaints. Upon the issues thus formed the cause was submitted to the court for trial, resulting in a finding and judgment in favor of appellees Josephine Duckwall, Madge Stevenson, Viola Stevenson, Ralph Stevenson, and Mabel Stevenson Ross upon their cross-complaint and against appellants on their complaint; that said appellees, together with appellee Mary Francisco, were the owners of said real estate; and that their title thereto be quieted as against the appellants. In due time appellants filed their motion for a new trial containing the grounds that the decision of the court is contrary to law and that the decision is not sustained by sufficient evidence. The motion was overruled, and it is this action of the trial court which is assigned here as error for reversal.

Appellants contend that by the terms of her will Ella Stevenson gave a positive, unqualified, and mandatory direction to sell her real estate and that such direction operated as an equitable conversion of her real estate into personalty; that such conversion took place at the date of the death of testatrix; and that the property of said testatrix directed to be sold should be considered as personalty for the purpose of distribution and should be governed by the law of the domicile of the testatrix, to wit, the State of Ohio, under which the devise or, legacy to any relative does not lapse by reason of the death of the devisee or legatee before the death of the testator.

Although insisting on the theory of equitable conversion, appellants have asked for partition of the real estate.

There can be no doubt in the instant case that Ella Stevenson, by the terms of her will, gave a positive

and unqualified direction that her farm situated near Bunker Hill in Miami County, Indiana, be sold at the demise of her husband and the proceeds distributed between her sister, Cora Lease, and her brother, H. A. Duckwall. Such direction in her will was sufficient to work an equitable conversion of the real estate therein referred to into money. And this is true, even though by the terms of the will, the sale of the real estate was not to occur until the death of her husband who was a life tenant. The failure to designate in her will by whom the sale should be made did not defeat or impair the power of sale. Under such circumstances appellants were not entitled to partition of the real estate in controversy. *Walling* v. *Scott* (1912), 50 Ind. App. 23, 96 N. E. 481, 97 N. E. 388.

Furthermore, our statute forbids the partition of land contrary to the intention of the testator as expressed in his will. (See Burns 1933, §3-2406, §1111 Baldwin's 1934.)

The beneficiaries may all agree to take the real estate in its original condition in lieu of the proceeds from the sale thereof had pursuant to said will, thus reconverting it. However, one of the beneficiaries may not elect to take his share in land without the consent of the others, for each one has a right under the will to a sale of the land, and to whatever advantages would accrue by a sale of the real estate in its undivided condition, and he cannot be deprived of the right without his consent. *Walling* v. *Scott, supra.* See also *Baker* v. *Copenbarger* (1853), 15 Ill. 103, 58 Am. Dec. 600; *Ebey* v. *Adams* (1890), 135 Ill. 80, 25 N .E. 1013, 10 L. R. A. 162; *Strode* v. *McCormick* (1895), 158 Ill. 142, 41 N. E. 1091; *Darst* v. *Swearingen* (1906), 224 Ill. 229, 115 Am. St. Rep. 152, 79 N. E. 635; *Pasquay* v. *Pasquay* (1908), 235 Ill. 48, 85 N. E. 316.

Since the trial court quieted the title to the real estate

in appellees upon their cross-complaint and held that the beneficiaries under the will of the husband of Mrs. Stevenson were the owners of the real estate, a more difficult question is presented. Does the direction in Item 2 of the will of Ella Stevenson for the sale of the real estate in Miami County, Indiana, upon the demise of her husband, work an equitable conversion of the real estate into personal property so that its disposition would be governed by the law of the State of Ohio, where testatrix resided, instead of the law of Indiana, where the real estate is situated?

Appellants contend that under the terms of the will of said decedent an equitable conversion of the real estate therein referred to took place at the death of the testatrix; that the interests which the brother and sister named in the will would have taken, had they survived the testatrix, assumed the character of personal property from that date; and that the legacies to them did not lapse by virtue of the law of the State of Ohio.

Appellees insist that under the law of Indiana the devise to Cora Lease, sister, and H. A. Duckwall, brother, lapsed because both preceded the testatrix in death and the real estate passed to the heir or heirs of the testatrix as in case of intestacy, to wit: the surviving husband of the testatrix, there being no father, mother, child, children, or the descendants of any child or children surviving; that the species of property involved in this action is real estate; and that therefore the law of the state in which the land is situated controls its transmission by will or its passage in case of intestacy. They insist that we must look to the law of the state in which the land is situated for the rules which govern its descent, alienation, and transfer, and for the effect and construction of wills and other conveyances, and that since the brother and sister preceded the testatrix in death, the legacy to each of them having

failed, there was no reason for the conversion of the property at the date of the death of the testatrix.

It must be conceded that the rule as to personal property is that the law of the place where the testator is domiciled at the time of his death governs as to the capacity of the testator to make a will and as to the forms to be observed in its execution and revocation, and as to its validity in every respect. Such questions as to bequests of personal property being governed by the law of the domicile of the testator, they are adjudicated when the will is admitted to probate in such jurisdiction, and the same is conclusive. It is equally well settled that title to and the disposition of real property, whether by deed, a last will, or otherwise, must be governed exclusively by the law of the country where it is situated. *The Evansville, etc., Co.* v. *Winsor* (1897), 148 Ind. 682, 48 N. E. 592.

It is true that the probate of the will of Mrs. Stevenson in the State of Ohio had no effect on the title of the real estate in Indiana for the obvious reason that title to the land, by virtue of the will, could only be acquired when the will was duly probated as a foreign will in compliance with the laws of this state. It became necessary in the instant case to probate the will as a foreign will, in order that the courts of this state might authorize a sale of the real estate under and by virtue of its terms and directions and effect a valid transmission of a legal title thereunder.

It must be conceded that the law of the place where the realty is situated determines whether the testator's will effects an equitable conversion of realty into personalty. Page on Wills (2d ed.) Vol. 2, §1445.

Furthermore, whether a legacy or bequest, of personalty, lapses because the beneficiary dies, or otherwise

becomes incapable of taking, before the death of the testator, is determined by the law of the testator's domicile, and whether a devise of realty lapses depends upon the law of the place where the land is situated. Page on Wills, *supra*, §1448.

Many of the courts of the country, including the courts of this state, have recognized and invoked the doctrine of equitable conversion.

In the case of *Comer* v. *Light* (1911), 175 Ind. 367, 373, 93 N. E. 660, 94 N. E. 325, our Supreme Court said:

> "The fiction of law, that under a simple direction to sell and divide the proceeds, conversion into money will be held in equity to have taken place at the date of the death of the testator, and that equity will treat that as done which is directed to be done, and it will be treated as that species of property into which it is directed to be converted, is grounded upon equitable considerations, and is interposed for the purpose of carrying out the intention of testators so far as that can be done within the rules of law, and generally for the purposes of equality, and doing equity between heirs or next of kin, where no other rights intervene, but it has never been understood that a testator can change realty to personalty, or vice versa, by the mere declaration that it shall be one or the other, and an examination of the cases will disclose that the fiction of constructive conversion is grounded upon the proposition that, in the absence of intervening interests or rights, the testator's intention, as it affects the beneficiary, shall control; . . ."

The fiction of constructive conversion rests on the proposition that in the absence of intervening interests or rights, the testator's intention, so far as it affects the beneficiary, will control. The Supreme Court, upon petition for rehearing in the case of *Comer* v. *Light, supra,* said at page 378:

> "This doctrine has been invoked in later cases in this state, not upon the grounds of its being a strict

rule of construction, but to produce equitable results, and this, coupled with the general doctrine of the law favoring the vesting of interests, and in carrying out the intent of testators with respect to those who are the intended beneficiaries, will be found to be the basis of that line of cases. This accounts for the doctrine of many of the cases upholding or declaring the rule of equitable conversion, by which all that is really meant is, that where no other rights intervene, or are asserted, the property will be treated for the purpose of carrying out the terms of the will, as that character of property into which it is directed to be converted, not because it is such property, but because it is directed to be so treated, and dealt with, in carrying out the intention."

In the case of *Lantz* v. *Caraway* (1913), 180 Ind. 484, 487, 103 N. E. 335, our Supreme Court said.

"The rule of equitable conversion is applicable as between the testator and the specific beneficiary to determine the character of the estate which the latter is ultimately to receive under the will and, in the absence of any expressed contrary intention on the part of the testator, the share of a beneficiary who dies before the termination of the life estate will generally pass as that character of property which he would have received upon the death of the life tenant."

In the instant case, had the brother and sister named in the will survived the testatrix, under the doctrine of equitable conversion there could be no question but that the property which they were to receive by virtue of the provisions of the will was personal property, the distribution of which would be governed by the laws of the state of the domicile of the testatrix, which, in the instant case, was the State of Ohio.

The weight of authority seems to be that an equitable conversion of testatrix's real estate took place at the time of her death, and such conversion will not be postponed by the fact that the land is not to be sold until after the death of the life tenant.

This court, in the case of *Nelson* v. *Nelson* (1905), 36 Ind. App. 331, 336, 75 N. E. 679, said:

> "It is the direction of the testator that the conversion shall be made which supports the fiction, and not the actual change of the property into money. Such fiction rests upon the maxim, 'Equity considers that as done which is required to be done.'"

Nor does the provision in the will which directs the sale of the lands after the death of the husband and the distribution of the proceeds therefrom conflict with the general proposition that the beneficiaries thereof are considered as the remaindermen, and their interest in the real property, which approaches a chattel real in character and possesses some, though not all, of the elements of a qualified fee, is liable to attachment and sale under execution, or it may be conveyed by them to another, the purchaser thereby taking the beneficiaries' share in the proceeds and taking title to the property as against all persons but the life tenant and the right of the executor to sell said property when the contingency arises. See *Rumsey* v. *Durham* (1854), 5 Ind. 71 and *Lantz* v. *Caraway, supra.*

In the case of *Walling* v. *Scott, supra,* p. 26, the court said:

> "Appellants concede that the interests of the beneficiaries vested at the testator's death. At this time the equitable conversion took place, although the time of sale and actual conversion was fixed by the will at a more or less remote and indefinite time, namely, at the death of the life tenant. . . .
>
> "Their interests vesting at the time of the testator's death, attached as personalty, for one claiming property under a will must take it in the character impressed upon it by that instrument. The beneficiaries here are not entitled under the will to the land itself, but to the proceeds of the land, and their interest is not an interest in real estate, but an interest in the proceeds of real estate, which by virtue of equitable conversion assumes the character

of personal property, and maintains that character until the actual conversion, although in certain instances the rights of third parties may intervene and attach as of the character of real property. . . ."

The court said in the case of *Rumsey* v. *Durham, supra,* p. 73:

"The testator's will evidently created a life estate in Anne Rumsey, and after her death or marriage it directed the executors, under an express power, to sell the premises, and divide the proceeds equally among his children. This direction to sell was, in effect, a conversion of the land into personalty. In equity it must be considered and treated as money. . . . Therefore, the subject of the testator's gift to his children was personal property, and its distribution, under the will, should be governed by the same rule as if the donation in the first instance had been money."

See also *In re McGraw's Estate* (1888), 111 N. Y. 66, 19 N. E. 233; *Burke* v. *Burke* (1913), 259 Ill. 262, 102 N. E. 293; *Bennett* v. *Bennett* (1918), 282 Ill. 266, 118 N. E. 391; *Padley* v. *Jones* (1924), 20 Ohio App. 203, 153 N. E. 185; and *Sherman* v. *Flack* (1918), 283 Ill. 457, 119 N. E. 293, 5 A. L. R. 456.

Section 342, entitled "Constructive or Equitable Conversion," at page 1139 of The American Law of Administration, by William F. Woerner, (3d ed.) reads:

"It seems most convenient to notice in this connection the doctrine which impresses upon real estate, directed by a testator to be sold for the purpose of distributing the proceeds to the persons designated by him, the character of personal property, and upon personal property directed to be converted into real, the character of real property. The rule invoked by this doctrine is, that in equity property will be treated as being already what the testator intended it to become. If the conversion is complete, out and out, or absolute and for all purposes, it operates immediately upon the death of the testator, and therefore determines the devolution of the property to the heir, devisee, or executor—not ac-

cording to the character in which the testator has left it, but according to that into which he has directed it to be converted; and the rights and liabilities of those interested in it attach from the moment of the testator's death, as if it were then converted, no matter when the actual conversion takes place."

In the case of *Whalley* v. *Lawrence's Estate* (1919), 93 Vt. 424, 428, 429, 108 Atl. 387, the Supreme Court of Vermont held that a will clearly indicating the testator's intention to have his real estate in a sister state converted into money settles the character of the property for the purposes of distribution, stating at pages 388 and 389:

"It is a well-settled rule of law as administered in equity that, in the constructions of wills in which real estate is ordered to be sold and turned into money, courts of equity, in dealing with the subject, consider it as personal. . . .

"It was clearly the intention of the testator to have the real estate in California converted into money and distributed among the legatees named in his will. The bequests to the several legatees named in his will were of the avails of that real estate, and not of the real estate itself, and those bequests took effect after the sale, and hence, under the well-settled rule above stated, that real estate is to be considered personal. . . ."

Under the doctrine of equitable conversion, the form into which property changes is not material, for equity will follow the property into whatever form it may assume, in order to secure it for the person entitled to it, and in the instant case it will follow the interests which the beneficiaries named in the will have in the land in the form it assumed at the death of the testatrix. *McGuffey* v. *McClain* (1891), 130 Ind. 327, 30 N. E. 296. This rule finds support in the following language expressed by the court in the case of *Comer* v. *Light, supra.* "The fiction of law . . . is grounded upon equitable considerations, and is inter-

posed for the purpose of carrying out the intention of testators so far as that can be done within the rules of law, and generally for the purposes of equality, and doing equity between heirs or next of kin, where no other rights intervene."

It should be added, in this connection, that the property is treated in equity, from the time of the conversion, as of the kind and form into which it is converted: and the rights of the parties thereto are determined with relation to the character into which it is changed. 3 Pomeroy's Equity Jurisprudence, §1164.

In the case of *Konvalinka* v. *Schlegel* (1887), 104 N. Y. 125, 130, 9 N. E. 868, the Court of Appeals of New York said:

> "The doctrine of equitable conversion, as the phrase implies, is a fiction of equity which is frequently applied to solve questions as to the validity of trusts; to determine the legal character of the interests of beneficiaries; the devolution of property, as between real and personal representatives; and for other purposes."

The doctrine of equitable conversion is a legal fiction invented to protect the beneficiaries and to sustain and carry out the intention of a testator or settlor, never to defeat it. 13 C. J., §2, p. 852.

Here the testatrix did not contemplate that in any contingency her heirs at law or any of them would succeed to the title of the land. From the terms of the will it obviously was not her intention for the beneficiaries to receive the land, but only the proceeds thereof. In order to effect the intention of the testatrix, as expressed by the terms of her will, the property, under the doctrine of equitable conversion, for the purpose of succession and to accomplish the purposes of the will, will be regarded as of that species which the testatrix directed or intended it to be, and, in the instant

case, the bequests of the proceeds of the sale to her brother and sister named are to be regarded as bequests of personal property, and not as devises of interests in the land.

Appellees contend that since the brother and sister named in the will preceded the testatrix in death, the legacy to each of them having failed, there was no reason for the conversion of the property at the date of the death of the testatrix.

There would be merit in this contention if the law of Indiana governed the provisions of the will. It will be noted that if appellees were correct in this contention, the will of Mrs. Stevenson, so far as it disposes of her real estate, has no effect and must be disregarded. But, as heretofore concluded, in order to give effect to her will, the property must be considered as personalty, and, under the law of Ohio, the legacies did not lapse.

Appellees have cited the case of *Clarke* v. *Clarke* (1900), 178 U. S. 186, 20 S. Ct. 873, 44 L. Ed. 1028. The facts in that case are that Mrs. Clarke died testate, a resident of South Carolina, the owner of real and personal property in South Carolina and also real estate situated in Connecticut. Her will was probated in South Carolina. In an action to construe her will, brought in the courts of South Carolina, the Supreme Court of that state concluded that her will worked an equitable conversion into personalty, at the time of her death, of all of her real estate, whatsoever the description and wheresoever situated. Subsequent thereto litigation was had in the courts of Connecticut concerning the disposition of the land situated in that state, wherein it was contended that the decision of the Supreme Court, in its interpretation and construction of her will to the effect that said will worked an equitable conversion of her real estate into personalty, at the time of her death, was binding and conclusive on the courts of Connecti-

cut. This litigation resulted in a holding by the Supreme Court of Connecticut that the will of Mrs. Clarke did not, at the time of her death, work an equitable conversion into personalty of the real estate situated in the State of Connecticut, and consequently, that though personal property might be governed by the law of the domicile, real estate within Connecticut was controlled by the laws of Connecticut, and hence the laws of Connecticut would control as to its disposition. The Supreme Court of the United States, upon a writ of error from the Supreme Court of the State of Connecticut, held that the courts of Connecticut, declaring the law of that state, had the right to determine the question as to the conversion of realty into personalty by will, even though the will had been made and probated in the domicile of the testatrix in another state, and that the courts of Connecticut, having declared that the will of Mrs. Clarke did not, at the time of her death, work an equitable conversion of the real estate situated in Connecticut into personalty, that therefore the Supreme Court of the State of Connecticut appropriately concluded that the law of the state in which the land is situated governs its descent and disposition.

In the instant case it is within the province of the courts of this state to determine in the first instance the question as to the conversion of the realty into personalty under the terms of the will of Ella Stevenson, and, in determining this question, should the courts declare the law of this state to be that the will did not work an equitable conversion, then the law of the state wherein the real estate is situated will govern its devolution. But should the courts of this state conclude that the will did work an equitable conversion of realty into personalty, then it necessarily follows that the law of the domicile of the testatrix controls.

In view of the conclusion we have reached, the property in controversy must be, as between the parties hereto, treated as personal property, and its distribution and disposition must be governed by the laws of the State of Ohio.

Judgment reversed, with instructions to grant appellants' motion for a new trial and for further proceedings not inconsistent herewith.