No. 47,636

In the Matter of the Estate of William E. Graham, deceased, JAMES E. GRAHAM, *Appellee*, v. THE HOME STATE BANK As Administrator de bonis non *Appellant*.

(533 P. 2d 1318)

Opinion filed April 5, 1975.

*Michael S. Holland,* of Holland and Holland, of Russell, argued the cause, and *Herbert N. Holland,* of the same firm, was with him on the brief for the appellant.

*Mark Arthur, Jr.,* of Thompson and Arthur, of Russell, argued the cause, and *Marvin E. Thompson,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case involves a claimed ademption or revocation of a specific devise of real estate where, during the lifetime of an incompetent testator, his attorney-in-fact acting on his behalf under a power of attorney, sold the real estate to provide funds to support the incompetent testator . The facts in the case are not in dispute and essentially are as follows:

(1) William E. Graham was the father of Ralph E. Graham, Vern K. Graham, Glen D. Graham, and Samuel A. Graham.

(2) On the first day of February 1962, William E. Graham executed his Will and Last Testament which was admitted to probate in the Russell County Probate Court on February 23, 1973. The testator provided in pertinent part in the third paragraph of his will as follows:

"Third: After my just debts and funeral expenses have been paid, I give, devise and bequeath all the rest, residue and remainder of my property, whether real, personal or mixed as follows:

"(a) The West Half (W/2) of the East Half (E/2) of Section Twenty-One (21), Township Fourteen (14), Range Thirteen (13), Russell County, Kansas, to Ralph Graham, also known as Ralph E. Graham, to be his absolute property, . . .

"(b) To Vern K. Graham, my home located at 316 Kansas, Russell, Kansas, which is primarily located in Lot 14, Block 113 and the furniture and furnishings if not needed to pay debts and bequests of the estate, . . ."

In the fourth paragraph of the will the testator bequeathed his residuary estate to his three sons, Ralph E. Graham, Vern K. Graham, and Glen D. Graham, share and share alike.

In the fifth paragraph of the will the testator provided in substance that if any of his sons should predecease him, the proportionate share which would have gone to the son had he been alive at the time of the testator's death, should go to the heirs of the deceased son's body.

(3) On May 8, 1961, William E. Graham by a power of attorney appointed his son, Ralph E. Graham, his attorney-in-fact. Ralph E. Graham served in that capacity from the date of his appointment on May 8, 1961, until August 12, 1965, the date of Ralph E. Graham's death.

(4) Subsequent to Ralph E. Graham's death, William E. Graham appointed his son, Vern K. Graham, as his attorney-in-fact on August 20, 1965. The power of attorney authorized Vern K. Graham to manage all of William E. Graham's property including the power to sell any real estate belonging to William E. Graham. This power of attorney to Vern K. Graham remained in full force and effect from August 20, 1965, until William E. Graham's death on January 19, 1973.

(5) William E. Graham was a widower and since 1963 had resided at a rest home at Ellsworth, Kansas. He was approximately 90 years of age when he entered the rest home in 1963. From 1961 until the time of his death William E. Graham was deaf. At his death it was impossible to communicate with him as he could not hear and his eye-sight was extremely limited. After executing

the power of attorney to Vern K. Graham on August 20, 1965, the decedent, William E. Graham, ceased to concern himself with business affairs. He was 92 at that time, had been deaf for four years and lacked any real understanding or capacity to take care of his business affairs.

(6) On February 9, 1972, Vern K. Graham, acting for his father under his power of attorney, sold the West ½ of the East ½ of Section 12, Township 14, Range 13, to Mr. and Mrs. Floyd W. Brandenburg for the purchase price of $32,000. The proceeds of the sale were deposited in a bank account maintained by Vern K. Graham for William E. Graham.

(7) The purpose of the sale of this real estate was to obtain sufficient money to provide for and pay the expenses of William E. Graham as a resident of the rest home. Vern K. Graham did not confer with William E. Graham regarding this sale of real estate either before or after the completion of the sale as Vern K. Graham deemed it necessary to sell the real estate to support and provide for William E. Graham. After the sale a portion of the proceeds was used for the payment of bills and expenses incurred in the care of William E. Graham.

(8) William E. Graham died on January 19, 1973. At the date of his death the sum of $21,469.00 was remaining from the proceeds of the sale of the real estate. It was the only cash asset available to the decedent for his care and maintenance at the time of his death.

(9) On January 30, 1973, a petition was filed by Vern K. Graham for the probate of the will of William E. Graham. Vern K. Graham was appointed executor and the will admitted to probate on February 23, 1973.

(10) James E. Graham, the appellee, was the sole and only heir of Ralph E. Graham. By virtue of the fifth paragraph of the will James E. Graham inherited or acquired whatever rights his father, Ralph E. Graham, had under the third paragraph and the other provisions of the will.

(11) On August 8, 1973, James E. Graham, filed his petition for allowance of demand in his grandfather's estate claiming that he was entitled to the balance of the proceeds from the sale of the real estate not expended in the amount of $21,469.00 in lieu of the real estate which had been specifically devised to his father, Ralph E. Graham, under the third paragraph of the will. This petition

for allowance of demand was transferred to the district court of Russell county for determination. In the course of the proceedings the Home State Bank of Russell was appointed administrator de bonis non to represent the estate in this litigation. The controversy in this case is over the right of James E. Graham to the balance of the proceeds of the sale of the real estate which was the subject matter of the specific devise to his father Ralph.

The case was submitted to the court on a stipulation of fact incorporating the factual circumstances set forth above. The district court found in favor of the claimant, James E. Graham, and awarded him the unexpended proceeds from the sale of the real estate. The Home State Bank as administrator de bonis non has appealed to this court on behalf of the estate.

The basic issue presented on this appeal is whether or not the conveyance of the real estate, the subject of the specific devise to Ralph E. Graham, by the testator's attorney-in-fact during the testator's lifetime, resulted in an ademption so as to nullify and render inoperative the special devise to Ralph E. Graham. Ademption is a concept peculiar to the law of wills and was defined in *In re Estate of Chevalier,* 167 Kan. 67, 204 P. 2d 748, as follows:

"Ademption is the term used to describe the act by which a specific legacy has become inoperative by the withdrawal or disappearance of the subject matter from the testator's estate in his lifetime." (Syl. ¶ 2.)

The nature of an ademption and its consequences are fully discussed in an excellent opinion by Mr. Justice Kaul in *In re Estate of Snyder,* 199 Kan. 487, 430 P. 2d 212. *Snyder* presents a fairly typical example of an ademption of a devise of real estate where the testator during his lifetime voluntarily sells the real estate. In *Snyder* the will contained a specific devise of a certain ranch to his nephews. Prior to his death the testator entered into a contract for the sale of the ranch. The contract provided for the appointment of an escrow agent and the payment of the purchase price over an extended period of time. The contract had not been fully executed at the time the testator died. The issue presented was whether the devisees named in the will were entitled to the proceeds of the sale in lieu of the land or whether there was an ademption resulting from the sale of the real estate by the testator which had the effect of making the specific devise inoperative. We held that there was an ademption of the specific devise and devisees named in the will were not entitled to the proceeds of the sale. The result reached in *Sny-*

*der* was consistent with Kansas cases under factual circumstances where the testator *personally* had disposed of specifically devised property during the testator's lifetime. (*In re Estate of Hill,* 162 Kan. 385, 176 P. 2d 515; *Taylor v. Hull,* 121 Kan. 102, 245 Pac. 1026, and other cases cited in the opinion.) As pointed out by the appellee in his brief in this case there is little dispute in this jurisdiction, or any other, regarding whether a specific devise or bequest is adeemed when the testator himself sells the property prior to his death. In the absence of some persuasive evidence of a contrary intention, it is adeemed. When the testator does not personally dispose of the specifically devised or bequeathed property before his death, problems sometimes arise.

In the case now before us if the testator, William E. Graham, while of sound mind and body had personally conveyed away the real estate described in the specific devise contained in the third paragraph of his will, our decision in *Snyder* would undoubtedly be controlling. Here, however, the factual circumstances are different because the real estate which was the subject matter of the specific devise was not conveyed with the full knowledge and consent of the testator during his lifetime. The conveyance here was made by the testator's attorney-in-fact by authority of his power of attorney at a time when the testator had no capacity or understanding relative to the sale of his real estate. It is these circumstances which complicate the present case and which distinguish it from the factual circumstances in *In re Estate of Snyder,* supra.

Practically all of the cases in which ademption was claimed by reason of acts not personally committed by the testator deal with conveyances by guardians, conservators, lunacy committees, or other court appointed officers. It seems logical to us that the same legal principles should apply to a conveyance by an attorney-in-fact acting under a power of attorney as are applicable to acts of a guardian, conservator, or lunacy committee. An analysis of the cases throughout the United States and England shows that there are many shades of the law of ademption with many conflicting conclusions reached. In a general way it may be stated that there are two distinct schools of thought or lines of authority on the effect of the disposition of specifically devised or bequeathed property prior to the death of the testator by acts other than those of the testator himself. These cases are contained in an extensive annotation on the subject in 51 A. L. R. 2d 770 entitled "Ademption

or revocation of specific devise or bequest by guardian, committee, or conservator of mentally or physically incompetent testator." The original volume is supplemented by additional cases in the later case service and its 1974 supplement. One line of cases takes the position that the conveyance of specifically devised property by the guardian or conservator of an incompetent testator results in an ademption as a matter of law. Under this point of view the intention of the testator is immaterial. This point of view is sometimes denominated the identity theory. It is inflexible and rigidly applied. If the property which is the subject of the specific devise is not in specie a part of the testator's estate at the time of his death, an ademption of the specific devise occurs, *period.* This rule was followed in the early English cases and in several jurisdictions in the United States. Although there is some difficulty in sorting out the cases, it could reasonably be concluded that the identity theory has been applied in England, Pennsylvania, New York, Vermont, and Canada.

The contrary point of view which is followed in the majority of the jurisdictions in this country has been denominated the intention theory. The intention theory is predicated upon the philosophy that the intention of the testator should control. If property which is the subject of the specific bequest or devise is sold by another person without the knowledge and intention of the testator, an ademption of the specific bequest or devise does not take place as to the unexpended proceeds of the sale. The intention theory has become the modern rule in this country. The annotation in 51 A. L. R. 2d cites cases from the following jurisdictions which support the intention theory: New Jersey, New Hampshire, Missouri, Michigan, Illinois, Virginia, Ohio, and in the volume of later cases California, Florida, Ohio, Idaho, Iowa, Massachusetts, North Carolina, and Oregon. In England the earlier rule was changed by statute in 1890 to adopt a position in line with the intention theory. (Halsbury's Statutes of England, 3rd ed., Vol. 25, § 107, p. 136 [Mental Health Act 1959].) It appears that Pennsylvania has also gone over to the intention theory. (*Irwin Estate,* 23 D. & C. 2d 33.) The intention theory is adopted in the Uniform Probate Code, Section 2-608.

It should be emphasized that where the property is conveyed by the guardian of an incompetent testator, an ademption does result to the extent of the proceeds of the sale which have already been

expended. It is only the *unexpended* balance of the proceeds which may pass in lieu of the conveyed property under the specific bequest or devise. In 6 Page on Wills, 3rd ed., Ademption, § 54.18, the present status of the law in the United States is declared to be as follows:

"In the United States a sale, collection, and the like by the guardian of an insane testator works an ademption as far as the proceeds of such sale and the like have been expended for the benefit of testator. If the proceeds of such sale, collection, etc., have not been expended for the benefit of the testator and can be traced, it is generally held in the United States that the sale, collection, and the like by the guardian does not adeem a specific devise or legacy; and that the devisee or legatee takes the proceeds as far as they can be traced. The act of a guardian in withdrawing the interest on a fund from a bank, or in collecting testator's share of the estate of another, or in selling realty for the purpose of reinvestment, does not adeem a specific bequest or devise of the property which the guardian has thus sold or collected."

The pitfalls of the identity rule are pointed out in the same section as follows:

"The results of the rule that sale, collection, and the like by guardian of an incompetent person operates as an ademption have been very unsatisfactory. A guardian who is hostile to one of the beneficiaries may adeem the gift to him by a sale of the property, or by collection of a debt. If he is friendly to one to whom a general gift is made or to whom a general residuary gift is given, he may increase the amount of such gift by converting the property into the form which is given to such beneficiary. . . ."

In this case the appellant, administrator de bonis non, takes the position that this court has heretofore adopted the identity theory by virtue of the following language in *In re Estate of Snyder,* supra, which quotes Atkinson on Wills (2d Ed.), Ademption, § 134, as follows:

"A testamentary gift of testator's specific real or personal property is adeemed, or fails completely, when the thing given does not exist as part of his estate at the time of his death. The doctrine now generally applies regardless of the intention of the testator, . . ." (p. 492.)

We do not take such a narrow view of our decision in *Snyder.* Immediately after the above quotation the opinion on page 493 goes on to say that the question of whether or not a disposition by a testator of the subject matter of a specific bequest has worked an ademption of the bequest must be determined in the light of facts and circumstances existing at the time of testator's death. As pointed out above *Snyder* involved a contract for the sale of the land described in the specific devise entered into *by the testator himself* during his lifetime. We do not have in *Snyder* the question

of the conveyance of property by the guardian or an attorney-in-fact of an incompetent testator. We construe *Snyder* to hold that the question of whether or not a disposition by a testator of the subject matter of a specific bequest results in an ademption of the bequest must be determined in the light of the facts and circumstances existing at the time of the testator's death. We do not construe it as holding that in all cases the intention of the testator is completely immaterial and is not to be considered in individual cases as they arise. In our judgment the result reached in *Snyder* does not control the ultimate disposition in this case.

In arriving at a decision in this case we believe that it would be helpful to consider *In re Estate of Elliott*, 174 Kan. 252, 255 P. 2d 645. There the testator devised all of his real estate including a farmhouse and building to his children. The wife consented to the will and was herself the beneficiary of the residue of his property. Thereafter, the farmhouse and buildings were destroyed by a tornado which also resulted in the testator's death some hours after the destruction. There resulted litigation between the wife and children over which was to receive the proceeds of the insurance policy upon the buildings. The wife contended that the destruction of the improvements in the testator's lifetime resulted in a partial ademption of the devise to the children. She argued the identity theory contending that the insurance proceeds were personal property, not real property, and that she was entitled to them under the residuary clause. We held that there was no ademption and that the children were entitled to the insurance proceeds in lieu of the buildings which had been destroyed. The rationale of the decision was that an equitable conversion took place and the insurance proceeds stood in place of the buildings. We pointed out that the theory of equitable conversion is a fiction invented by courts of equity in carrying out the purposes of the testator, and it should be applied with that effect in view. We concluded in *Elliott* that the contention of the widow that an ademption should be found violated the obvious intent of the testator and general equitable principles. It is clear that the rationale of *Elliott* is consistent with the intention theory on ademptions.

We have concluded that the trial court was eminently correct in holding that the specific devise was not adeemed under the facts and circumstances of this case. We hold that where following execution of his will a testator becomes incompetent and his conserva-

tor or attorney-in-fact acting under a power of attorney sells the property which is the subject matter of a specific devise and a portion of the proceeds from the sale of the property remains in the hands of the conservator or attorney-in-fact at the time of the testator's death, an ademption ordinarily does not take place. The unexpended proceeds of the sale are impressed with a trust in the hands of the executor and on distribution of the estate should be paid to the devisee in accordance with the specific devise contained in the will. We adopt this rule not only because of the fact that it represents the rule which is followed in the overwhelming majority of the jurisdictions in this country but also because we consider it the better reasoned rule and more in line with our prior decisions which give supreme importance to the intention of a testator in determining how his property should be distributed on his death.

The judgment is affirmed.

FROMME, J., not participating.