**In re ESTATE OF Clara V. RICHARD, Deceased.**

**INDIANA DEPARTMENT OF STATE REVENUE, INHERITANCE TAX DIVISION, Appellant (Petitioner Below),**

v.

**FARMERS STATE BANK, LAPAZ, INDIANA and Mary Alice Zieger, Personal Representative of the Estate of Clara V. Richard, Deceased, Appellee (Respondent Below).**

**No. 3–980A276.**

Court of Appeals of Indiana, Fourth District.

April 30, 1981.

Rehearing Denied June 4, 1981.

Linley E. Pearson, Atty. Gen., Herbert L. Allison, Deputy Atty. Gen., Indianapolis, for appellant.

George F. Stevens, William L. Fortin, Stevens, Wampler, Travis & Fortin, Plymouth, for appellee.

CHIPMAN, Judge.

This is an appeal by the Indiana Department of State Revenue (Department) from a judgment entered against it on its petition for reappraisement and redetermination of inheritance and transfer tax. The issue presented for review is whether Ind. Code 29–1–13–6 applies to contractual sales of a decedent's real property, entered into by the decedent's guardian prior to the decedent's death, thereby causing the balance due under the contract to be distributed as a personal asset.

We affirm.

## FACTS

On October 7, 1974, Clara Richard executed her will in which she gave all of her personal property to her husband, Alonzo Richard, and all of her real property to her husband and the Farmers State Bank (Bank) in trust to distribute a life estate to her husband with the remainder being divided among two of her children and four of her grandchildren. Clara was found to be incompetent on July 30, 1976, and her husband and the Bank were appointed as her co-guardians. They petitioned the court to allow them to sell a farm owned by Clara and on December 14, 1976, the farm was sold on contract pursuant to the court's order. Clara died, still incompetent, on July 20, 1978. At that time the unpaid balance on the contract was $176,949.92.

This amount was reported on "SCHEDULE A–1 REAL ESTATE" on her Schedule of All Property and was carried forward on the inheritance tax return to "SCHEDULE E—PERSONS BENEFICIALLY INTERESTED IN THIS ESTATE" where it was distributed by the co-executors as real property pursuant to Clara's will and placed in the trust benefitting her husband, children, and grandchildren. This distribution resulted in Clara's estate paying less inheritance tax than it would have if the unpaid contract balance was scheduled as a personal asset which would have been distributed solely to her husband.

The Department petitioned for a redetermination of inheritance taxes arguing the balance due should have been distributed as a personal asset but the trial court found that Clara did not enter into the real estate contract and that no equitable conversion occurred.

## THE APPLICATION OF IC 29–1–13–6

Relying on IC 29–1–13–6, the Department argues the sale of the real estate by contract converted the unpaid balance into personal property.

"29–1–13–6 Conversion—When realty treated as personalty—When personalty treated as realty.—(a) Unless foreclosure shall have been completed and the redemption period shall have expired prior to the death of a decedent, . . . any real property sold by the decedent on written contract, the purchase price of which shall not have been paid in full prior to the death of the decedent, shall be deemed personal assets in the hands of his personal representative and be distributed and accounted for as such . . . .

(b) In all cases of a sale of real property by a personal representative, upon order of the court the surplus of the proceeds of such sale remaining on the final settlement of the account shall be considered as real property and disposed of among the persons and in the same proportions as the real property would have been if it had not been sold."

The Estate's response to this argument is that the statute only covers "real property sold by the *decedent* on written contract," not real property sold on contract by a decedent's guardian. We agree with the Estate.

Section 29–1–1–3 of Probate Code states, "[D]efinitions appearing in this article shall apply to words used in the Code, unless otherwise apparent from the context." Under that same section a decedent is defined as "one who dies testate or intestate." We do not believe it is "otherwise apparent from the context" of IC 29–1–13–6 that the legislature meant to include sales by guardians within this section.

Additionally, if we construe that section to include sales by guardians, then it will be in conflict with Ind.Code 29–1–18–44.

"29–1–18–44 Devise by ward; subsequent incompetency—In case of the guardian's sale or other transfer of any real or personal property specifically devised by the ward, who was competent at the time when he made the will but was incompetent at the time of the sale or transfer and never regained competency, so that the devised property is not contained in the estate at the time of the ward's death, the devisee may at his option take the value of the property at the time of the ward's death with incidents of a general devise, or the proceeds thereof with the incidents of a specific devise."

This statute was patterned after § 231 of the Model Probate Code. The commission's comments to that code explain the policy considerations being advanced by § 231. "... When the testator becomes incompetent ... it seems unfair that acts of his guardian should work an ademption when the incompetent has no opportunity to remedy the situation by making a fresh will...."

Clearly by this section, the legislature has attempted to prevent or minimize ademption caused by guardian sales [1] and since both IC 29–1–13–6 and IC 29–1–18–44 were sections of the same act, it is not tenable to think that the legislature intended to allow ademption under IC 29–1–13–6 and on the other hand disallow ademptions under IC 29–1–18–44. Sales by guardians are not subject to the provisions of IC 29–1–13–6.

Other jurisdictions that have been faced with similar situations have reached the same conclusion. In *Bryson v. Turnbull*, (1953) 194 Va. 528, 74 S.E.2d 180, 184, the court said, "[T]he prevailing rule in equity [is] that those dealing with the estate of an insane person cannot so change the nature of the property as would change the devolution of the same upon death." As explained by the court in *Brown v. Cowper*, (1957) 247 N.C. 1, 100 S.E.2d 305, 311, "The object[ive] of the rule is to prevent as far as possible, any alteration by the guardian of a lunatic of the respective rights of the heirs of such lunatic in his real property should he die still a lunatic."

In her will Clara specifically set out how she wanted to dispose of her real property. We believe these wishes should be followed if at all possible.

The judgment of the trial court is affirmed.

YOUNG, P. J., and MILLER, J., concur.

---

1. See *Diaz v. Duncan*, (1980) Ind.App., 406 N.E.2d 991.