Mae Clements FUNK and Dennis Woods, Co–Executors of the Estate of Cleo M. Funk, Deceased, Mae Clements Funk and Karl M. Jacobs, Appellants (Defendants Below),

v.

Larry M. FUNK and Peggy Odegaard, Appellees (Plaintiffs Below).

No. 79A02–9004–CV–208.[1]

Court of Appeals of Indiana, First District.

Nov. 27, 1990.

---

1. This case was diverted from the Second District by direction of the Chief Judge.

Charles R. Vaughan, Grant C. Mitchell, Vaughan and Vaughan, Lafayette, for appellants.

Charles Max Layden, Rod A. Ray, Layden and Layden, Lafayette, for appellees.

ROBERTSON, Judge.

Mae Clements Funk and Dennis Woods as the co-executors of the Estate of Cleo M. Funk, and Mae Clements Funk and Karl M. Jacobs, individually, appeal the trial court's granting of partial summary declaratory judgment[2] in favor of plaintiffs, Larry M. Funk and Peggy Odegaard. The trial court's finding that the doctrine of equitable conversion does not apply in the present case causes the proceeds of a certain land sale contract, with a principal balance of $105,000.00, to pass under Cleo's will to his children, the plaintiffs, instead of to Mae Clements Funk, his widow. The co-executors raise two issues, neither of which constitutes error. Therefore, we affirm.

## FACTS

Cleo M. Funk, decedent, was the father of the plaintiffs/appellees, Larry M. Funk and Peggy Odegaard. Cleo was appellant, Mae Clements Funk's, husband. Mae was Cleo's childless second wife.

Cleo executed a will on September 1, 1983.[3] In the will he devised to Mae a certain parcel of real estate consisting of 29 acres of land and "all of my personal property." The will provided that if Mae should predecease Cleo or fail to survive him for a period of five (5) months, the personal property would go to his children, Larry and Peggy. The will contained a residuary clause devising the remainder of the estate (which necessarily would only consist of real estate), "of every kind and nature and wherever situate or located" to the children, Larry and Peggy. The will did not otherwise provide for either Larry or Peggy.

The will did not specifically mention the Funk family farm which Cleo owned at the time he executed his will. This farm had been in the family for three (3) generations and consisted of 101 acres of land. It is undisputed that—had the farm not been sold by contract, as will be discussed later—the farm would have passed under the residuary clause to the children.

On February 19, 1987, Cleo appointed Jacobs as his attorney-in-fact by a durable power of attorney. Jacobs prepared the power of attorney.

On January 25, 1988, Cleo was injured in an automobile accident and remained comatose until his death. While Cleo was comatose, Jacobs sold the farm by land contract under the authority of the power of attorney for $130,000.00. The unpaid balance on the contract was $105,000.00 on the date Cleo died, June 22, 1988. After Cleo's death, the co-executors, Mae Clements Funk, and Jacobs' law associate, Dennis Woods, included the expected proceeds from the land contract as personal property instead of real estate in the inventory filed in the estate. Because the will bequeathed all the personal property to Mae, the characterization of the land contract as personal property effectively causes the children, Larry and Peggy, to be disinherited.

---

2. This appeal concerns the first count of plaintiffs' three count complaint. The other two counts sound in legal malpractice against Karl M. Jacobs, individually, and would appear to be contingent upon the plaintiffs' inability to obtain relief under the first count.

3. Cleo's will was prepared either by attorney, Karl M. Jacobs, or his law associate, Dennis Woods (who was appointed as co-executor by the will). Jacobs witnessed the will.

## DECISION

██ The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Marsym Development Corp. v. Winchester Economic Development Com'n* (1983), Ind.App., 447 N.E.2d 1138, 39 A.L.R. 4th 1087, *trans. denied*. Any doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448. For purposes of determining if summary judgment is appropriate, a fact is said to be material if its existence facilitates the resolution of any of the issues involved. *Anderson v. State Farm Mutual Auto Insurance Co.* (1984), Ind.App., 471 N.E.2d 1170. Summary judgment must be denied if the resolution thereof hinges upon a state of mind, credibility of witnesses, or weight of testimony. *Bassett, supra.* Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use. *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448.

### I.

Whether the trial court erred by finding that the doctrine of equitable conversion does not operate as a matter of law to cause the unpaid balance of the land contract to pass to Mae as personal property?

██ IND. CODE 29–1–13–6, which codifies the doctrine of equitable conversion, reads in pertinent part as follows:

> ... any real property sold by the decedent on written contract, the purchase price of which shall not have been paid in full prior to the death of the decedent, shall be deemed personal assets in the hands of his personal representative and be distributed and accounted for as such....

The co-executors argue that the well-settled doctrine of equitable conversion as applied to the undisputed facts of this case operates to convert the Funk family farm to personal property as a matter of law. As such, the expected proceeds from the land sale contract pass to Mae under the will.

██ The doctrine of equitable conversion is a legal fiction invented to protect the beneficiaries and to sustain and carry out the intention of the testator, never to defeat it. *Duckwall v. Lease* (1939), 106 Ind.App. 664, 20 N.E.2d 204. Under the doctrine of equitable conversion, the form into which the property changes is not material, for equity will follow the property into whatever form it may assume in order to secure it for the person entitled thereto. *Id.* To bring about an equitable conversion, there must be an adequate expression of the testator's absolute intention that the land shall be sold and turned into money. *Walling v. Scott* (1911), 50 Ind.App. 23, 96 N.E. 481.

In *In re Estate of Richard* (1981), Ind. App., 419 N.E.2d 1012, we held that the doctrine of equitable conversion, as codified under I.C. 29–1–13–6, did not operate to convert the sale proceeds of a farm sold under a land contract into personal property. The farm was owned by an incompetent testator and sold on contract by her co-guardians during her incompetency and before her death. In *Richard*, we held I.C. 29–1–13–6 did not operate to convert the property in question into personal property because the statute only covers "real property sold by the *decedent* on written contract," not real property sold on contract by a decedent's guardian. *Id.* 419 N.E.2d at 1014 (emphasis in original). In deciding *Richard*, we noted that the testator had set out her intentions for the disposition of the farm in particular by specifically devising the farm to a trust benefitting her husband, children and grandchildren. We held that her wishes should be followed if at all possible. We relied on the decisions of other jurisdictions faced with similar situations. For example, we noted that a Virginia court held "[T]he prevailing rule in

equity [is] that those dealing with the estate of an insane person cannot so change the nature of the property as would change the devolution of the same upon death." *Id.* (citations omitted.) We cited a North Carolina case which held "The object[ive] of the rule is to prevent as far as possible, any alteration by the guardian of a lunatic of the respective rights of the heirs of such lunatic in his real property should he die still a lunatic." *Id.* (Citations omitted.)

The co-executors argue that *Richard,* is inapposite to the case at bar because Jacobs sold the farm as Cleo's attorney-in-fact and not as Cleo's guardian. They distinguish the authority of a guardian with an attorney-in-fact by asserting that an attorney-in-fact does not need court approval, as does a guardian, to sell a particular piece of property. They conclude that, because the power of attorney executed by Cleo gave Jacobs the power to "execut[e] Warranty Deeds ... and all things in connection with any and all of my property and affairs of every kind and nature the same as I might or could do if personally present," the doctrine of equitable conversion operates as if Cleo personally entered into the land sale contract.

The effect of an act performed by an attorney-in-fact under a durable power of attorney is governed by IND.CODE 30–2–11–2 which reads:

> All acts done by an attorney-in-fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the benefit of and bind the principal and his successors in interest as if the principal were competent and not disabled.

In the present case, the children, Larry and Peggy, have never asserted the sale of the farm was invalid or not binding upon them. Likewise, they do not contend that the ownership rights of the third party buyers of the Funk farm under the land contract are in question.

In the well-reasoned opinion of *In re Estate of Graham* (1975), 216 Kan. 770, 533 P.2d 1318, a testator's attorney-in-fact sold a parcel of real estate during the testa-

tor's incompetency which had been specifically devised by will. The issue was whether the sale worked an ademption or revocation of this specific devise or whether the unexpended proceeds of the sale that remained in the hands of the executor were impressed with a trust to be paid in accordance with the specific devise contained in the will. The court held that when the testator does not personally dispose of specifically devised property, an ademption does not necessarily take place. The Court noted that:

> Practically all of the cases in which ademption was claimed by reason of acts not personally committed by the testator deal with conveyances by guardians, conservators, lunacy committees, or other court appointed officers. It seems logical to us that the same legal principles should apply to a conveyance by an attorney-in-fact acting under a power of attorney as are applicable to acts of a guardian, conservator, or lunacy committee.

*Id.* 533 P.2d at 1321.

We are impressed with the *Graham* decision and hold the same legal principles that would have operated had a guardian sold the Funk family farm during Cleo's incompetency should be applied in this case. Therefore, *Richard, supra,* controls with regard to the operation of the doctrine of equitable conversion. Because Cleo did not personally sell the farm, the doctrine of equitable conversion does not necessarily apply as a matter of law to convert the farm into personal property. We find no error.

## II.

Whether the trial court erred in granting summary judgment because a genuine issue of material fact existed with respect to Cleo's intent that the farm be sold in his lifetime?

■ The trial court made findings in support of its decision to grant summary judgment. The co-executors complain about the following finding:

> 2. That there is no evidence of any intent by decedent before his death to sell

the real estate described in plaintiffs' complaint on land contract. R. p. 104.

As discussed above, the operation of the doctrine of equitable conversion hinges upon a determination of the testator's intent. *Richard, supra.* The intention of the testator must be sought or gathered from the entire will, and so the court will strive to ascertain the intention of the testator as it appears from a full consideration or examination of the entire will, or from the four corners thereof. 27 I.L.E. *Wills* § 174 (1959). In addition to considering the language and provisions of the will, the court will, when necessary in order to ascertain the testator's intention, consider circumstances and conditions surrounding the testator when the will was executed. 27 I.L.E. *Wills* § 175. The court, in construing a will, should, as far as possible, assume the standpoint of the testator and place itself in the testator's position at the time of the execution of the will. *Id.* The construction of a will, which necessarily includes a determination of the testator's or testatrix's intent, can—under the appropriate circumstances—be appropriately disposed of by way of summary judgment motion. *In re Estate of Ensminger* (1969), 144 Ind.App. 338, 246 N.E.2d 217.

The pleadings and Cleo's will (which was properly before the trial court as a part of the pleadings), establish that Cleo willed all his personal property and 29 acres of real property to his widow, Mae. He left everything else—which, if there was to be anything left, necessarily had to be real estate—to his children through the residuary clause. Nowhere in the will did he mention what was probably his most valuable asset, the Funk family farm.

By applying the above rules for construing a will, we believe that it is obvious that, at the time Cleo executed his will, he intended to leave his children the family farm. We believe that the use of the residuary clause was merely a "short cut" method of devising the family farm to the children. By way of this short cut, Cleo's attorneys were able to manifest Cleo's tes- tamentary intent of devising the farm to the children without going to the trouble of setting out the long, complex legal description of the Funk family farm in the will. Therefore, we hold that the children have met their burden of demonstrating the non- existence of any genuine issue of material fact concerning Cleo's testamentary intent entitling them to summary judgment.

■ When the moving party has met its burden on summary judgment, the nonmov- ant may not rest upon the mere allegations or denials of his pleadings, but must come forward with sufficient evidence to contro- vert the moving party's assertion that no factual issue exists. *Pike County v. State ex rel. Hardin* (1984), Ind.App., 469 N.E.2d 1188. In order to preclude the entry of summary judgment, the nonmovant may not contend that there were factual issues concerning a theory which they could, but did not, raise in their pleadings. *Willsey v. Peoples Federal Sav. and Loan Ass'n of East Chicago* (1988), Ind.App., 529 N.E.2d 1199.

The co-executors assert in their brief that Cleo intended to sell the farm during his lifetime. (Appellant's brief p. 11.) They allege further that Jacobs sold the farm in order to raise cash to meet the expenses of what was expected to be a long hospitalization for Cleo. The co-executors argue that these circumstances imply that Cleo intended to sell the farm before his death and therefore the doctrine of eq- uitable conversion properly applies to cause the land contract proceeds to inure to Mae. In any event, the co-executors argue that the above facts demonstrate a genuine is- sue of material fact concerning Cleo's in- tent precluding summary judgment.

However, none of the above facts were properly before the trial court for its con- sideration of summary judgment. We have searched the record. The facts asserted above are only stated in trial memorandum and the appellants' briefs on appeal.[4]

■ Ind. Trial Rule 56(C) reads:

---

**4.** The co-executors assert that after Cleo exe- cuted the power of attorney, he personally en- tered into a real estate listing agreement for the purposes of selling the Funk farm. A copy of

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, filed pursuant to Trial Rule 5(D), together with any testimony show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Pertinent part only.)

Materials adduced in support of a motion under this rule must be in the form intended or the court will not consider the same. *Freson v. Combs* (1982), Ind.App., 433 N.E.2d 55. Unsworn commentary of counsel does not comply with the summary judgment rule and will not be considered. *Id.* A brief filed in support of a summary judgment motion will not be considered. *Id.* An unsworn statement or uncertified exhibit does not qualify for consideration on a summary judgment motion. *Id.*

The undisputed facts properly before the trial court indicate that Cleo intended to devise the farm to his children. Because the doctrine of equitable conversion is a legal fiction invented to protect the beneficiaries and to sustain and carry out the intention of the testator and never to defeat it, *Duckwall, supra,* we find no error in the trial court's judgment which honors Cleo's intentions.

Judgment affirmed.

RATLIFF, C.J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority for two reasons. First, the doctrine of equitable conversion is applicable. Second, the testator's state of mind as it relates to his intent to sell the farm is a question of fact; summary judgment should not have been granted. I would reverse the judgment of the trial court.

---

the listing contract which was purportedly signed by Cleo was attached to the co-executors' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. We concede that this agreement could have constituted evidence

---

The trial court granted summary judgment based upon these findings:

2. That there is no evidence of any intent by decedent before his death to sell the real estate described in plaintiffs['] complaint on land contract.

3. That to apply the doctrine of equitable conversion would ignore and defeat Testator's testamentary intent.

4. That under the circumstances of this case no equitable conversion under I.C. 29-1-13-6 occurred.

Record, p. 104.

## I.

### *Applicability of the Equitable Conversion Statute*

The equitable conversion statute states in pertinent part:

* * * any real property sold by the decedent on written contract, the purchase price of which shall not have been paid in full prior to the death of the decedent, shall be deemed personal assets in the hands of his personal representative and be distributed and accounted for as such ...

IC 29-1-13-6. Citing *In re Estate of Richard* (1981), Ind.App., 419 N.E.2d 1012, *transfer denied,* the majority finds the statute inapplicable here.

In *Richard,* the Fourth District found the statute to be inapplicable to a sale of land by the guardian of the decedent. In reaching that conclusion, the Court found that to apply the statute would conflict with IC 29-1-18-44, which provided that the specific devisee of land sold by a guardian of the testator would take the value or proceeds of the land, at his option, at the death of the testator. This statute was enacted in order to prevent ademptions when the testator has no power to correct the situation by making a new will. *Richard, supra* at 1014.

It is clear that the *Richard* court was simply applying general rules of statutory

---

that Cleo manifested an intent to sell the farm during his lifetime. However, because it was improperly presented to the trial court, we cannot consider it.

construction. Statutes are to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence. 26 I.L.E. Statutes, § 128 (1960). Statutes which relate to the same subject matter are *in pari materia* and should be construed together, although they contain no reference to each other. *Citizens Action Coalition v. Northern Indiana Public Service Co.* (1985), Ind., 485 N.E.2d 610, 617, *cert. den.* 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687. Acts which appear inconsistent are not to be so construed if it is possible to construe them otherwise. *New York Cent. R. Co. v. Public Service Comm. of Indiana* (1958), 237 Ind. 544, 147 N.E.2d 547.

Significantly, there is no statute corresponding to IC 29–1–18–44 with respect to powers of attorney in the probate code. Also significant is the fact that IC 29–1–18–44 has been repealed, and there is no similar provision in the current Probate Code.

The Uniform Durable Power of Attorney Act provides:

> All acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the benefit of and bind the principal and his successors in interest as if the principal were competent and not disabled.

IC 30–2–11–2. Thus, the same rule of construction which led to the result in *Richard* would require that the durable power of attorney statute, which treats the act of the attorney-in-fact as the act of the principal, be construed consistently with the equitable conversion statute. This requires application of the equitable conversion statute to the present situation.

*Richard* may be further distinguished on the basis that the policy underlying the inapplicability to guardianships does not support inapplicability to agency relationships. Guardianships are court appointed and require court intervention in order to sell real estate. Attorneys-in-fact are appointed by the principal himself and may sell real estate without court intervention. The distinction seems to be based on the fact that the attorney-in-fact is an agent of his principal, is in a good place to know the wishes of the principal, and his powers are limited by the scope of his durable power of attorney. *See Restatement (Second) of Agency* §§ 12, 14, and 14F and comments (1958).

Finally, the majority's implicit conclusion that the statute permits a trial judge to decide on perceived equitable grounds whether it is to be applied is clearly in error. The majority apparently bases this conclusion on the moniker "equitable conversion" [1] and the fact that the statute is similar to the common law doctrine of equitable conversion. In fact, the majority cites cases decided under the common law doctrine in support of its decision.

However, the statute differs significantly from the common law doctrine in at least one respect. IC 29–1–13–6 provides that real property sold by the decedent *shall* be deemed personal assets. When the word "shall" is used in a statute, it is presumed to be used in its imperative or mandatory sense. *State ex. rel. Hatcher v. Lake Superior Court* (1986), Ind., 500 N.E.2d 737, 740. Thus, the legislature has not favored the courts with the discretion to choose whether the statute is to apply when real property has been sold but not paid for prior to the death of the decedent. The cases cited by the majority indicating that the testator's intent is the controlling factor were decided before the 1953 statute was enacted, and the principle for which they are cited is not supported by the language of the statute.

## II.

### *Remaining Issues of Fact*

Even if the intent of the testator were a valid reason to ignore the statute, the co-executors correctly point out that there remains a question of fact precluding summary judgment. The majority finds no

---

1. The term "equitable conversion" does not appear anywhere in the statute.

question of fact with respect to the intent of Cleo Funk. Interestingly, the majority notes that "[s]ummary judgment must be denied if the resolution thereof hinges upon a state of mind ..." Op. at 129. However, the majority asserts that under proper circumstances, the construction of a will, including a determination of the testator's intent, may be disposed of by way of summary judgment. Op. at 131. The majority finds this to be a proper circumstance because the "obvious" intent of Cleo was to leave the family farm to the children. Op. at 132.

This conclusion stretches the bounds of reason in light of the fact that the "obvious" intent to make a specific devise is extracted from a general residuary clause. The majority concedes that there was no specific mention of the family farm in the will. Op. at 128. Nonetheless, the majority finds:

> [T]he use of the residuary clause was merely a "short cut" method of devising the family farm to the children. By way of this short cut, Cleo's attorneys were able to manifest Cleo's testamentary intent of devising the farm to the children without going to the trouble of setting out the long, complex legal description of the Funk family farm in the will.

Op. at 131. I am unable to join the majority in drawing such an inference from the residuary clause. Clearly, it was possible for the decedent to have acquired other real property before his death. Thus, the residuary clause was not tailored exclusively for the farm. At least one contrary inference may be drawn from the omission of the farm from the will—the decedent intended to sell it before his death, in order to convert it to personalty.

I agree that the intention of the testator is to be ascertained, if possible, and carried into effect in the construction of every will. However, this intention is to be collected from what is contained in the will. The Majority has gone outside the will to obtain what it considers an equitable rather than a testamentary distribution of the farm. This is obviously true since the will is silent as to the farm—a residuary clause is not a specific devise.

This is why summary judgment is so often inappropriate where the legal issues involve a determination of intent. I find no clear expression of Cleo Funk's intent with respect to the family farm on the face of the will.

I would reverse the partial summary judgment entered by the trial court and remand for a trial on the merits.