(154 P.3d 24)
No. 94,645

In the Matter of the Estate of DONALD E. PRITCHARD, Deceased.

—

Opinion filed March 2, 2007.

*Allan E. Coon* and *L. Franklin Taylor*, of Norton, Hubbard, Ruzicka & Kreamer, L.C., of Olathe, for appellant Thomas G. Neff.

*Michael S. Martin*, of Westwood, for appellant Ronald Schulteis.

*Eric Kjorlie*, of Topeka, for appellee Margaret Pritchard.

*J. David Farris*, of J. David Farris Law Offices, of Atchison, for appellee Special Administrator of the Estate of Donald E. Pritchard.

Before GREENE, P.J., CAPLINGER, J., and LARSON, S.J.

LARSON, J.: In this appeal, we consider numerous rulings involving the administration of the estate of Donald E. Pritchard.

The administrator of the estate, Ronald Schulteis, and his attorney, Thomas Neff, appeal the district court's decision affirming the magistrate judge's ruling granting a money judgment and attorney fees against them to the surviving wife, Margaret Pritchard, based on the administrator's and attorney's failure in to provide notice to her of her right to claim property as her homestead before it was sold.

The numerous issues on appeal require that we set forth the proceedings and testimony in considerable detail.

## FACTUAL AND PROCEDURAL BACKGROUND

Donald died intestate on September 17, 2001, survived by Margaret, his wife of almost 20 years and four adult children from a previous marriage. At the time of his death, Donald owned a house in McLouth, Kansas ("the McLouth property") titled in his name only. Donald and Margaret had moved earlier that month from the McLouth property to a bed and breakfast owned by Margaret's daughter in Meriden, Kansas. Five days prior to Donald's death, he and Margaret had executed a listing agreement with a realtor for the sale of the McLouth property.

Ronald Schulteis, a licensed certified public accountant and the husband of one of Donald's children, had assisted Donald during his lifetime and was requested by the heirs to file a petition for issuance of letters of administration. Both Schulteis' petition and Margaret's entry of appearance and waiver of notice of the hearing on the petition, filed 2 weeks after Donald's death, identified Margaret's address as the bed and breakfast. The district court appointed Schulteis administrator of Donald's estate. Schulteis filed an inventory and valuation of Donald's estate, which consisted of the McLouth property and tangible personal property located therein.

Subsequently, on October 25, 2001, Schulteis filed a petition for sale of the McLouth property. The petition specifically alleged the McLouth property was not a homestead and, further, that sale of the property was necessary in order to pay Donald's debts and funeral and estate administration expenses. Margaret again entered an appearance and waived notice of the hearing on the petition for

sale. The document indicated her "address and residence" was in Meriden, not McLouth. Finding the allegations of the petition to be true, the district court issued an order on October 26, 2001, for sale of the McLouth property at private sale. See K.S.A. 59-2401(a)(6) (permitting appeal of an order of sale within 30 days of entry of the order).

The McLouth property sold in March 2002, prompting Schulteis to petition the district court for confirmation of the sale on April 22, 2002. Schulteis sent Margaret a copy of the petition and notice of the scheduled hearing thereon which was set for May 14, 2002. The district court held a hearing on Schulteis' petition, at which only Schulteis and his attorney, Neff, appeared. Finding that all interested parties received notice of the hearing, the court issued an order on May 14, 2002, confirming the sale. Again, no appeal from this order was taken. See K.S.A. 59-2401(a)(6) (permitting appeal of an order confirming sale within 30 days of entry of the order).

Five months later on October 4, 2002, Margaret filed a petition, claiming spousal survivor benefits pursuant to K.S.A. 59-403, K.S.A. 59-505, and K.S.A. 59-6a207 and seeking an order prohibiting the payment of any funds from the estate. In her petition, Margaret challenged payments made by Schulteis from the estate and alleged she was entitled to one-half of the real property and one-half of the proceeds from the sale of the real property. Further, Margaret claimed neither Schulteis nor Neff had informed her of her statutory rights and, therefore, she had been unaware of her rights under Kansas law. Margaret's petition referenced a proposed family settlement agreement and objected to the administrator's and his attorney's fees provided for therein. Margaret subsequently amended her petition to claim she was entitled to all of the real property and all of the proceeds therefrom. Neither the original nor amended petition sought a personal judgment against Schulteis and/or Neff.

Schulteis filed written defenses to Margaret's amended petition, specifically denying her claim to the real property or its proceeds. Additionally, Schulteis claimed all the heirs to Donald's estate agreed to disposition of the assets in accordance with a family set-

tlement agreement that provided for the sale of the real property, payment of Donald's and Margaret's debts, and distribution of the balance equally to the heirs. Finally, Schulteis claimed Margaret was not only aware of Schulteis' payment of her and Donald's debts but actually directed the payment of such in accordance with the family settlement agreement.

The parties tried the matter before a district magistrate judge. At the conclusion of testimony, Margaret submitted a trial brief in which she claimed Schulteis converted funds from the estate and requested that the magistrate find Schulteis liable for double the value of his allegedly unauthorized distribution. See K.S.A. 59-1704 (prescribing liability for conversion). She made no mention of any claim for damages against Neff. Subsequently, Margaret submitted proposed findings of fact and conclusions of law, claiming Schulteis and Neff should be held jointly and severally liable in damages for the difference between the sale price of the McLouth property ($68,000) and the amount remaining in the estate ($37,551.80), as well as for her attorney fees due to their failure to inform her of her statutory homestead rights.

The magistrate found Donald and Margaret had determined prior to Donald's death to sell the McLouth property and had signed a listing agreement for purposes of selling the house. The magistrate ruled that the property nonetheless qualified as a homestead for purposes of K.S.A. 59-401 and was, therefore, exempt from distribution. In doing so, the magistrate reasoned that Donald and Margaret occupied the homestead but were receiving health care assistance in Margaret's daughter's house at the time of Donald's death. The magistrate ruled that Schulteis perpetrated a fraud against Margaret by failing to inform her of her statutory homestead rights and, further, that Neff failed to perform his duty as an officer of the court to advise Margaret of her rights, thereby reinforcing the fraud committed against her. Accordingly, the magistrate entered judgment against Schulteis and Neff, jointly and severally, for the amount of $68,000, less the funds remaining in the estate plus attorney fees of $3,400. The magistrate also revoked Schulteis' authority as administrator and ordered that neither he nor Neff receive any fees for their services concerning the estate.

Schulteis and Neff appealed the magistrate's decision to the district court. See K.S.A. 59-2408 (allowing appeal from magistrate's decision to be taken to district court; district court determines issues de novo). Although three of Donald's children also appealed the decision, they are not parties to the present appeal. Neff moved for an order in limine prohibiting Margaret from asserting any claims against him and from proffering any evidence of his alleged liability. Alternatively, Neff sought dismissal of all claims purportedly raised against him by Margaret. To the extent any such claims could not be dismissed outright, Neff requested the court enter summary judgment in his favor. The district court denied Neff's motion in its entirety.

During the bench trial before the district court judge, Schulteis testified he was not familiar with the Probate Code and although he was aware of the existence of spousal exemptions in estate tax law, he was not an expert in estate taxes. Schulteis conceded he never informed Margaret of such exemptions or that she might have a spousal interest in the McLouth property. Schulteis testified he did not recognize that Margaret had a spousal interest in the McLouth property at the time of Donald's death because Donald was the sole owner of the property. Further, Schulteis testified he never directed Neff to investigate if spousal exemptions might apply to Margaret or to discuss such exemptions with Margaret. Conversely, Schulteis testified Neff never informed him of the need to investigate Margaret's spousal exemptions.

Schulteis testified he knew Donald and Margaret had moved out of the McLouth property and into her daughter's bed and breakfast for medical purposes before Donald's death. Schulteis testified furnishings remained in the McLouth property but that Margaret told family members they were moving from the McLouth property and selling the house. Schulteis testified that he understood Donald and Margaret's move to the bed and breakfast to be permanent, with Donald having indicated that he intended to live at the bed and breakfast "until his final days." Schulteis acknowledged that Margaret moved back to the McLouth property at some point after Donald's death, but Schulteis did not know when this happened. Schulteis testified Margaret remained in the McLouth property

until the new buyers took possession and that Margaret took the furnishings when she moved out.

Regarding the sale of the McLouth property, Schulteis testified a "for sale" sign remained in the yard from the time he obtained a court order to sell the property in October 2001 until the property sold the following March. Schulteis testified Margaret never mentioned any objection to the property being sold and, in fact, Margaret told him several times, both before and after Donald's death, that she wanted the property sold. Schulteis indicated he first learned of Margaret's objection to the sale upon receiving notification from her attorney in October 2002.

Schulteis testified that after the sale of the McLouth property, Margaret presented him with some bills she wanted paid. Schulteis said he paid bills at the express direction of Margaret and the rest of the family; some of these bills pertained to Margaret's personal debts. Additionally, Schulteis testified the family agreed that after bills were paid, any remaining money in the estate would be divided into fifths and disbursed accordingly. Schulteis admitted the family settlement agreement was never signed. Schulteis testified Margaret received Donald's pension and life insurance proceeds, both of which passed to her outside of the probate estate.

Neff testified he represented Schulteis in his capacity as administrator but did not represent the beneficiaries of the estate, including Margaret. Neff conceded he never informed Margaret of her spousal rights or any spousal exemptions that may apply and, in fact, did not meet Margaret in person until May 14, 2002. Neff testified their first encounter occurred in the hallway outside the courtroom before the hearing on Schulteis' motion for confirmation of the sale of the McLouth property. Neff said he asked Margaret if she had any objection to the sale of the property, to which she said no. Neff testified Margaret then asked why a certain bill had not yet been paid. Neff contended this was the only conversation he ever had with Margaret.

Neff denied having an obligation to inform Margaret of her spousal rights, explaining that he represented only the administrator of the estate. Neff claimed a conflict of interest would have been created had he informed Margaret of those rights because he

would have been advising one beneficiary to the detriment of the others. In addressing Schulteis' obligations as administrator, Neff testified it was not the administrator's duty to inform Margaret of her spousal rights due to the adverse interests of the beneficiaries, and, moreover, the beneficiaries had separately entered into an agreement, albeit an unsigned one, pertaining to the disposition of the estate.

Neff testified he sent notices and other pleadings to Margaret at the address of the bed and breakfast, not the McLouth property. Neff testified the waivers entered by Margaret never identified the McLouth property as her address and he had no knowledge of Margaret returning to the McLouth property following Donald's death.

With regard to Margaret's representation, Neff testified James F. Swoyer, Jr., entered an appearance on behalf of Margaret the day after the hearing on Schulteis' petition for confirmation of the sale of the McLouth property. Neff testified that in the short time following the confirmation of the sale, Margaret's counsel never indicated that Margaret objected to the sale or otherwise wished to assert a claim against the proceeds of the sale; rather, counsel sent Neff a letter authorizing the payment of various debts.

Donald's son, James Douglas (Doug), testified Donald and Margaret's move to the bed and breakfast was not simply related to Donald's convalescence but had been planned since before Donald learned he had cancer. Doug testified Donald had indicated as early as May 2001 that he wanted to sell the McLouth property and pay off bills and that the move to the bed and breakfast was intended to be permanent. Further, Doug testified Margaret expressed her intention following Donald's death not to return to the McLouth property but to live at the bed and breakfast permanently.

Margaret testified and explained that Donald wanted to sell the McLouth property upon learning he was sick and she went along with his wishes. Margaret acknowledged the property was listed for sale both prior to and after Donald's death. With regard to the bed and breakfast, Margaret testified she and Donald were there for only a few days before he died and that she returned to living

at the McLouth property the day after Donald's death. Margaret said she never used the bed and breakfast as her mailing address.

Margaret testified no one informed her of her spousal rights following Donald's death and, further, she expressed her desire to stay on the McLouth property on one occasion to two of the children but was told she could not stay. Although she acknowledged having signed an entry of appearance and waiver of notice on the petition for sale of the McLouth property, Margaret denied understanding what the document meant. Margaret conceded she did not consider Neff to be her attorney but, rather, the attorney for Donald's estate. Margaret testified she hired a lawyer, Swoyer, after talking with Neff at the courthouse, but she did not learn of her homestead rights until she met with her subsequent counsel, Thomas Rost.

Swoyer testified and confirmed he was Margaret's counsel from May 15, 2002, until she retained Rost. Swoyer testified he could not recall whether he informed Margaret of her spousal rights pertaining to the McLouth property or of her right to appeal from the district court's order confirming the sale of the property. He said Margaret had not expressed dissatisfaction with the sale but they had discussed bills that were being paid or should be paid.

The district court found no family settlement agreement controlled the administration of the estate and Margaret never knowingly and voluntarily relinquished her statutory homestead rights or spousal allowances. Further, the court found Margaret did not abandon such rights and allowances by listing the McLouth property for sale and temporarily residing elsewhere to accommodate Donald's declining health, as she did return to the McLouth property following Donald's death. With regard to the magistrate's award of attorney fees, the district court first made the following findings:

"3. The Court further finds that regarding the claim for attorneys fees by Margaret Pritchard, there is no on-point authority for the allowance of attorney fees for litigation of spousal allowance and homestead rights. The Court further finds that said demand should be asserted against the estate itself and that any claim for reimbursement therefore should be undertaken against the prior administrator, Ronald Schulteis and/or his attorney, Thomas Neff, pursuant to an independ-

ent action on behalf of the estate against those parties individually by the special administrator of the estate.

"4. The Court further finds no abuse of discretion regarding the assessment of fees by the Probate Court against the administrator and attorney and further finds that allowance was supported by substantial competent evidence."

Finally, the district court relieved Schulteis of his duties as administrator and appointed a special administrator, David J. Farris, who is a party to this appeal.

Schulteis filed a motion to alter or amend judgment seeking clarification of the district court's findings with respect to the assessment of fees. The district court held a hearing on Schulteis' motion on February 28, 2005. During the arguments, the district judge said, "Well, I think—I don't [know] how they can take judgment against them [Schulteis and Neff] without a separate collateral proceeding. I think you've got to pursue that, Mr. Farris. That's my position." After this statement, Farris read from the magistrate's ruling; a discussion followed, with the court questioning authority for the judgment. The judge ultimately held: "I'm going to find that the entire judgment is affirmed by this Court and entered as a judgment." The request for further fees before the district court by attorney Rost was denied. The district court confirmed that he was adopting the findings of fact and memorandum of the magistrate in its entirety.

From all of these findings and rulings, Schulteis and Neff have timely appealed.

## ISSUES TO BE RESOLVED

We have fully considered the issues raised and the arguments made by Schulteis and Neff. We have also fully considered all of the arguments made on behalf of Margaret and by Farris as the special administrator.

We will not, however, address these arguments in the order raised by either Schulteis or Neff, as we deem the following questions or issues to be controlling in resolving this appeal.

1. Did jurisdiction or factual or legal basis exist under which a personal money judgment could legally be granted against Neff?

ANSWER: No.

2. Did Schulteis or Neff have the duty to inform Margaret of her possible homestead rights in the McLouth real property and other statutory rights?

ANSWER: No.

3. Does the unappealed confirmation of sale of real property order make the question of whether Margaret had homestead rights in the McLouth real property moot?

ANSWER: Yes.

4. Is Margaret estopped from contesting the payments made by Schulteis for her personal and other obligations that she asked him to pay?

ANSWER: Yes.

5. Did the district court err in assessing attorney fees for Margaret's counsel against Schulteis and Neff?

ANSWER: Yes.

6. Does the failure of Schulteis and Neff to brief or raise as an issue on appeal the district court's order removing Schulteis as administrator and denying Schulteis and Neff compensation for their services result in these issues being abandoned?

ANSWER: Yes.

In addition to addressing the above issues, we will also suggest what issues remain to be resolved based on the pleadings currently in the record.

## ARGUMENTS AND AUTHORITIES

*Did jurisdiction or factual or legal basis exist under which a personal money judgment could legally be granted against Neff?*

The entry of a judgment against Neff, a nonparty, raises the question of whether personal jurisdiction existed upon which a judgment could be granted against him. In *Carrington v. Unseld*, 22 Kan. App. 2d 815, 817, 923 P.2d 1052 (1996), our court said:

" 'Whether the district court has jurisdiction is a question of law over which this court has unlimited review.' [Citations omitted.]

"For a court to act upon a claim for relief, the court must have both subject matter and personal jurisdiction over the parties. *State ex rel. Secretary of SRS v. Stephens*, 13 Kan. App. 2d 715, 716, 782 P.2d 68 (1989).

" 'Subject matter jurisdiction is the power of the court to hear and decide a particular type of action.' *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985). Subject matter jurisdiction is the power to decide and not the exercise of that power. *Behee v. Beem*, 156 Kan. 115, 117-18, 131 P.2d 675 (1942).

"Personal jurisdiction is defined as the '[p]ower which a court has over the defendant's person and which is required before a court can enter a personal or in personam judgment.' Black's Law Dictionary 854 (6th ed. 1990)."

To the extent that we are required to look to the provisions of the Kansas Probate Code, K.S.A. 59-101 *et seq.*, the scope and range of permissible orders in probate proceedings involves issues of law over which an appellate court has unlimited review. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

It is first clear factually that Neff was never named as a party to this probate proceeding. No one ever attempted to join him as a party. It was only after the magistrate issued a personal judgment against Neff that any pleadings were filed on his behalf. In those pleadings he denied the right of the court to issue any judgment against him and at all times he has asserted nonparty status.

The claims that were asserted against Neff by Margaret essentially are that he committed legal malpractice and fraud by silence. These are clearly tort claims that could only have been asserted by a proceeding under chapter 60 of the Kansas Statutes Annotated.

*Carrington* further teaches us that "[j]urisdiction over a person can be acquired only by issuance and service of process in the method prescribed by statute or by voluntary appearance." 22 Kan. App. 2d 815, Syl. ¶ 3. Neff was never served. He made no voluntary appearance and has resisted jurisdiction over his person at every material step of these proceedings.

It is crystal clear that the district court below did not have personal jurisdiction over Neff. While this alone is sufficient to require any judgment against Neff to be reversed, it is also clear that no subject matter jurisdiction existed in this case as well.

The provisions for the administration of estates of decedents are found in chapter 59 of the Kansas Statutes Annotated. K.S.A. 59-101 states: "This act is named and may be cited as the Kansas probate code."

K.S.A. 59-103 identifies the authorized purposes of the Probate Code. K.S.A. 59-103(a)(3) states the court is authorized "[t]o direct and control the official acts of executors and administrators . . ." but in the nine subsections of 103, there is no provision and no language giving any indication that a court acting in the administration of an estate has any authority or jurisdiction to enter a judgment for what is clearly a tort claim against an attorney for an executor or administrator.

It is thus clear that subject matter jurisdiction does not exist to support the judgment rendered against Neff.

The lack of either personal jurisdiction or subject matter jurisdiction is sufficient by itself to require reversal of the judgment against Neff and in our case, both are absent. The judgment against Neff is reversed.

There may be other defenses to such a judgment which have been argued by Neff but any discussion of them would be dicta and is not necessary to our holding.

*Did Schulteis or Neff have the duty to inform Margaret of her possible homestead rights in the McLouth real property and other statutory rights?*

Schulteis, in his brief, argues the district court erred in rendering a judgment against him on the theory of fraud by silence. He presents three arguments. First, he claims there is no duty, statutory or otherwise, requiring him as administrator to notify Margaret of her spousal rights. We will fully discuss this question as it is determinative of this issue.

However, we also note that Schulteis makes a jurisdiction argument that even if the duty to advise existed, that duty would require a tort action under chapter 60 of the Kansas Statutes Annotated and may not be litigated in a chapter 59 proceeding. Schulteis' third argument is that the district court erred in limiting the issues and evidence at trial only to whether a family settlement existed and whether Margaret abandoned or otherwise waived her homestead rights but then rendered a tort judgment against him on Margaret's claim for fraud by silence.

In contrast, Margaret maintains Schulteis had a fiduciary responsibility under the Probate Code to inform her of her statutory rights and the district court properly found Schulteis perpetrated a fraud by remaining silent when he had a duty to speak.

While Schulteis' second and third arguments both have merit, this appeal must first be resolved by considering the question of whether a duty existed on Schulteis' part which he violated by his failure to advise Margaret of all of her spousal rights.

The existence of a duty is a question of law upon which our review is unlimited. *Colombel v. Milan*, 24 Kan. App. 2d 728, 730, 952 P.2d 941 (1998). In resolving this issue, we will also consider numerous statutory provisions the interpretation of which are questions of law over which we have unlimited review. See *Foster*, 281 Kan. at 374.

Insofar as a claim of fraud by silence is made, *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 260, 978 P.2d 922 (1999), instructs us as follows:

> "In all averments of fraud, the circumstances constituting fraud shall be stated with particularity. K.S.A. 60-209(b). To establish fraud by silence, the plaintiff must show by clear and convincing evidence the following elements: (1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to plaintiff. *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, Syl. ¶ 6, 918 P.2d 1274 (1996)."

The magistrate's decision which was ultimately adopted by the district court assumed Schulteis and Neff had a duty to inform Margaret of her homestead and other spousal rights. Then, both courts held the duty was violated and found Schulteis and Neff personally liable to Margaret for the difference between the sale price of the McLouth property and the remaining cash assets in the estate.

We first consider whether the duty assigned to Schulteis and Neff by the courts below legally exists. As will be demonstrated, while a statutory duty now exists based on the 2006 amendment to

K.S.A. 59-2233 effective July 1, 2006, there was no duty on Schulteis' part prior to that date to inform or give notice to Margaret of her homestead and/or spousal rights.

A review of Margaret's amended petition shows she claims to be entitled to spousal benefits pursuant to K.S.A. 59-403, 59-505, and 59-6a207. K.S.A. 59-403 pertains to both testate and intestate estates and provides a surviving spouse an allowance of certain types of personal property as well as an allowance of not more than $35,000 in money or other real or personal property; this property is not liable for the payment of decedent's debts or other demands against the estate.

K.S.A. 59-505 entitles a surviving spouse to

"one-half of all real estate of which the decedent at any time during the marriage was seized or possessed and to the disposition whereof the survivor shall not have consented in writing, or by a will, or by an election as provided by law to take under a will, except such real estate as has been sold on execution or judicial sale, or taken by other legal proceeding."

The final provision relied upon by Margaret, K.S.A. 59-6a207, includes in the augmented estate a surviving spouse's property (with the exception of the homestead, homestead allowance, family allowance, and social security payments) and nonprobate transfers to others.

Margaret's amended petition did not claim that she was entitled to the homestead or a homestead allowance under K.S.A. 59-6a215, which reads:

"A surviving spouse is entitled to the homestead, or in lieu thereof the surviving spouse may elect to receive a homestead allowance of $35,000. The homestead or homestead allowance is exempt from and has priority over all demands against the estate. The homestead or homestead allowance is in addition to any share passing to the surviving spouse by way of elective share."

Similarly, Margaret's amended petition makes no claim for an elective share under K.S.A. 59-6a201 *et seq.*, which is clearly applicable. Our Supreme Court, speaking through Justice Lockett in *In re Estate of Antonopoulos*, 268 Kan. 178, 180-84, 993 P.2d 637 (1999), set forth a 5-page analysis that justifies the holding in Syl. ¶ 3: "A surviving spouse's elective share rights provided in K.S.A. 59-6a201 *et seq.* apply to testate and intestate estates."

In analyzing the duty question, we look to the notification that is statutorily required. We agree with Schulteis' argument that at the time in issue in this case there was no statutory provision in K.S.A. 59-401, 59-403, 59-6a207, or anywhere else in chapter 59 of the Kansas Statutes Annotated requiring administrators to advise a surviving spouse of her homestead rights or the right to surviving spouse allowances.

Changes occurred in the Probate Code when the elective share statutes, K.S.A. 59-6a201 *et seq.*, were adopted effective January 1, 1995. See L. 1994, ch. 132, §§ 1-17. See Kansas Estate Administration, § 2.1-2.17, p. 2A1-2A8 (6th ed. rev. 1997). Section 20 of ch. 132, in 1994, confusingly amended K.S.A. 59-2233, but this problem was quickly remedied when L. 1996, ch. 53, sec. 7, further amended K.S.A. 59-2233 as follows:

"~~Except where the court has previously determined the validity and binding consent to a will, when a will is admitted to probate~~ *Upon the appointment and qualification of any administrator or executor, the filing of a petition for an order refusing to grant letters of administration or the filing of an affidavit pursuant to K.S.A. 59-618a, and amendments thereto,* the court shall forthwith ~~transmit to the surviving spouse a certified copy thereof~~ *cause a copy of the will, if any,* together with a notice statement to *be mailed to* the surviving spouse stating: 'Under K.S.A. 59-6a201 through 59-6a217, *and amendments thereto,* you may have ~~valuable rights to take a share of conveyances~~ *a right to take a share of property owned by the decedent at death, in whole or in part, and of transfers of property* made by the decedent prior to death.' ~~If such spouse has consented to the will, as provided by law, such consent shall control, otherwise such spouse shall be deemed to have elected to take under the testator's will unless such spouse shall have filed in the district court, within six months after the notice of the right to the elective share, an instrument in writing to take by the laws of intestate succession. If such spouse files an election before the inventory and valuation of the estate is filed, the election shall be set aside upon petition of the spouse made within 30 days after the filing of the inventory and valuation. For good cause shown, the court may permit an election within such further time as the court may determine, if a petition therefor is made within such period of six months.~~ *Such notice shall be mailed within 10 days of the qualification of the administrator or executor, the filing of a petition for an order refusing to grant letters of administration or the filing of an affidavit pursuant to K.S.A. 59-618a, and amendments thereto. Proof shall be by affidavit filed with the court.*"

This provision clearly states that it is the court's obligation and not that of an administrator or executor to give the surviving spouse the required notification.

We know of no Kansas case on point that holds there is an obligation on an administrator prior to July 1, 2006, to advise a surviving spouse of his or her rights. Estate proceedings are clearly adversarial, and due process notice is required or may be waived. In this case, Margaret was advised by her daughter and stepson to seek legal counsel and had retained Mr. Swoyer at a time when the sale of the McLouth property could have been challenged and homestead rights claimed therein.

Interestingly, the 2006 Kansas Legislature further amended K.S.A. 59-2233 so that, effective July 1, 2006, it now reads:

"*(a)* Upon the appointment and qualification of any administrator or executor, the filing of a petition for an order refusing to grant letters of administration or the filing of an affidavit pursuant to K.S.A. 59-618a, and amendments thereto, the ~~court~~ *administrator, executor, petitioner or affiant* shall forthwith ~~cause~~ *mail* a copy of the will, if any, together with a notice statement ~~to be mailed~~ to the surviving spouse stating: 'Under K.S.A. 59-6a201 through 59-6a217, and amendments thereto, you may have a right to take a share of property owned by the decedent at death, in whole or in part, and of transfers of property made by the decedent prior to death.' Such notice shall be mailed within 10 days of the qualification of the administrator or executor, the filing of a petition for an order refusing to grant letters of administration or the filing of an affidavit pursuant to K.S.A. 59-618a, and amendments thereto. Proof shall be by affidavit filed with the court.

(b) *The mailing requirement of subsection (a) may be waived if:*

(1) *The surviving spouse is the petitioner or affiant; and*

(2) *a statement that the surviving spouse is aware that under K.S.A. 59-6a201 through 59-6a217, and amendments thereto, the surviving spouse may have a right to take a share of property owned by the decedent at death, in whole or in part, and of transfers of property made by the decedent prior to death is:*

(A) *Included in the petition for letters of administration, the petition for probate of a will, the petition for an order refusing to grant letters of administration or the affidavit pursuant to K.S.A. 59-618a, and amendments thereto; or*

(B) *included in an affidavit filed in the matter within 10 days after issuance of letters of administration, issuance of letters of testamentary, issuance of an order refusing to grant letters of administration or the filing of an affidavit pursuant to K.S.A. 59-618a, and amendments thereto.*" K.S.A. 2006 Supp. 59-2233.

Our canon of statutory construction that " ' "[w]hen the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment," ' " *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88-89, 106 P.3d

492 (2005), is applicable. See *State v. Gordon*, 275 Kan. 393, 405, 66 P.3d 903 (2003).

It is thus clear there was no statutory obligation or duty on Schulteis or Neff to give notice to Margaret of her statutory rights prior to July 1, 2006, and the district court's holding is reversed.

The obligations, rights, and duties relating to the administration of estates are contained within the Probate Code, and there is no common-law obligation on administrators which Schulteis or Neff has been shown to have violated. An administrator's ultimate obligation is to act in the best interests of the estate. See *In re Estate of Stahl*, 226 Kan. 48, 53, 596 P.2d 121 (1979). We know of no cited case that provides that an administrator or his attorney has any specific obligation to any one particular heir other than to act in the best interests of the estate.

Schulteis does make valid arguments than in the absence of a duty, chapter 60 jurisdiction does not exist here. Therefore, as we held with regard to Neff, there is no subject matter jurisdiction here as well. Any other arguments of Schulteis are cumulative and need not be reached or discussed.

For all of the reasons set forth above, the judgment granted in favor of Margaret and against Schulteis and Neff is reversed.

*Does the unappealed confirmation of sale of real property order make the question of whether Margaret had homestead rights in the McLouth real property moot?*

Schulteis argues there is no basis for a homestead rights argument by Margaret because the McLouth real property was sold and the sale confirmed without objection or appeal on her part.

Margaret and Farris contend Margaret was not barred from making an untimely election of homestead rights due to the fraud committed by Schulteis and Neff. For all of the reasons set forth in the previous issue, it is clear the elements of fraud by silence do not exist. Our case is totally different factually from *In re Estate of Hessenflow*, 21 Kan. App. 2d 761, 776, 909 P.2d 662 (1995), *rev. denied* 259 Kan. 928 (1996), upon which Margaret and Farris rely.

The finality of probate orders and appeals therefrom or the lack of appeals are questions of statutory interpretation which, as we

have previously stated, are issues subject to our unlimited review. See *Foster*, 281 Kan. at 374.

The facts in this case clearly show that a sale of the McLouth real property was made and a "Report and Petition for Confirmation of Sale of Real Estate at Private Sale" was filed on April 22, 2002. The report and petition was set for hearing on May 14, 2002, at 1 p.m., and notice of the time and place of hearing was ordered to be given pursuant to K.S.A. 59-2208. An affidavit of mailing of the notice of hearing to all heirs is recorded on May 14, 2002, and the "Order Confirming Sale of Real Estate at Private Sale" was entered and recorded on May 14, 2002.

K.S.A. 59-2401, in applicable part, states:

"(a) An appeal may be taken within 30 days from the date of entry of any of the following orders, judgments, decrees, and decisions:

. . . .

(6) An order authorizing, refusing to authorize, confirming or refusing to confirm the sale, lease or mortgage of real estate.

. . . .

"(c) Except as otherwise provided in this section, appeals taken pursuant to this section shall be taken in the manner provided by chapter 60 of the Kansas Statutes Annotated for other civil cases."

K.S.A. 59-2401 and K.S.A. 60-2103a were considered and construed in *In re Estate of Winslow*, 21 Kan. App. 2d 691, Syl. ¶ 2, 906 P.2d 182 (1995), and it was held that "[a]n appeal pursuant to K.S.A. 59-2401 from an order entered by a district magistrate judge in a probate matter may be taken within 30 days."

In construing the provisions of K.S.A. 59-2401, our Kansas courts have held that the time for appeals from judgment and orders in probate cases commences from the date the order is signed by the judge and filed with the clerk of the court. *In re Estate of Burns*, 227 Kan. 573, 574-75, 608 P.2d 942 (1980). In our case, the order confirming the sale of the McLouth real property was signed and filed on May 14, 2002. It is also our rule that if an appeal is not taken, the result is that the finding and decree of the court becomes final and binding on everyone. See *Eaton v. Doe*, 172 Kan. 643, 657, 243 P.2d 236 (1952).

There was no timely appeal filed from the order confirming the sale of the McLouth real property. Margaret would have been required to file an appeal within 30 days subsequent to May 14, 2002, and she did not do so. Because of this the sale of the McLouth real property is final, and there was no available homestead upon which a claim of homestead rights could have been made at the time Margaret filed her petition to claim spousal survivor benefits on October 4, 2002. This makes the question of whether Margaret had homestead rights a moot issue.

As was stated in *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, Syl. ¶ 1, 912 P.2d 716 (1996):

"The general rule is that an appellate court does not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy which recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive."

Further, Margaret had retained legal counsel who could have timely appealed from the order confirming the sale and claimed homestead rights. Margaret did not do so. The question of whether she had homestead rights can have no effect on the issues in this case.

In K.S.A. 59-2213, there is a provision relating to probate judgments which states: "The court shall have control of its orders, judgments, and decrees for 30 days after the date of rendition thereof. Thereafter such orders, judgments, and decrees may be vacated or modified as provided by subsection (b) of K.S.A. 60-260 of the code of civil procedure." At no point in the proceedings in this case has Margaret ever raised the issue of K.S.A. 60-260(b) or attempted to set aside or modify the order confirming the real estate sale which is clearly final.

With the sale being final, the existence or lack of existence of homestead rights is a moot question which we will not answer.

*Is Margaret estopped from contesting the payments made by Schulteis for her personal and other obligations that she asked him to pay?*

The application of the doctrine of equitable estoppel is a discretionary matter which we review on abuse of discretion standard. *Shaffer v. City of Topeka*, 30 Kan. App. 2d 1232, 1236, 57 P.3d 35 (2002).

As was said in *Schraft v. Leis*, 236 Kan. 28, 36, 686 P.2d 865 (1984), "[e]stoppel involves an assertion of rights inconsistent with past conduct, silence by those who ought to speak, or situations where it would be unconscionable to permit persons to maintain a position inconsistent with one in which they have already acquiesced. [Citation omitted.]"

Schulteis argued it was unreasonable for the district court to refuse to consider that Margaret requested that certain bills be paid, personally benefitted from the bills being paid, and then objected to their payment. We have previously set forth reasons why no judgment can be lawfully rendered against either Neff or Schulteis but we answer this issue solely to aid the court below in the closure of this estate.

The record reflects that Margaret requested and instructed Schulteis to pay the Providian credit bill, her personal car loan, the funeral bill for which she was personally obligated, an amount for a recliner, and an amount to Kathy Bouska. The accounting reflects these items were paid by Schulteis, and it is unconscionable to permit Margaret to now claim they should not have been paid when they were paid at Margaret's request.

Schulteis did err in making such payments without a family settlement agreement being signed by all interested parties, but if any argument against his actions exist, they would inure to the other heirs and not Margaret.

There were other claims against the estate paid as part of the sale of the property, but as we have previously held that transaction is final and unappealed from and any arguments relating thereto have been extinguished.

In summary, we hold that Margaret is estopped from contending the administrator improperly paid indebtedness for which she was

personally obligated or the payment of which she personally requested.

*Did the district court err in assessing attorney fees for Margaret's counsel against Schulteis and Neff?*

For the reasons previously stated, judgments may not be granted against Neff or Schulteis. They further argue herein that the district court lacked authority to grant Margaret's counsel attorney fees for his representation.

Whether the district court had authority to impose attorney fees is a question of law allowing this court unlimited review. *Rensenhouse v. Bauer*, 33 Kan. App. 2d 148, 150, 98 P.3d 668 (2004). A district court cannot grant attorney fees absent statutory authority or an agreement by the parties. 33 Kan. App. 2d at 150. Nor does a trial court have authority to impose attorney fees under its equitable powers absent statutory authority. *United States Fidelity & Guaranty Co. v. Marsh*, 21 Kan. App. 2d 885, 905-06, 908 P.2d 1329 (1995).

The district court in its September 21, 2004, memorandum decision found in response to Margaret's claim for attorney fees that "there is no on-point authority for the allowance of attorney fees for litigation of spousal allowance and homestead rights." The trial court further held:

"The Court further finds that said demand should be asserted against the estate itself and that any claim for reimbursement therefore should be undertaken against the prior administrator, Ronald Schulteis and/or his attorney, Thomas Neff, pursuant to an independent action on behalf of the estate against those parties individually by the special administrator of the estate."

The trial court then confusingly and conflictingly went on to hold: "The Court finds no abuse of discretion regarding the assessment of fees by the Probate Court against the administrator and attorney and further finds that allowance was supported by substantial competent evidence."

When later confronted by timely motions to alter and amend, the trial court considered its previous order and stated:

"The Court's intention in paragraphs three (3) and four (4) of the Memorandum Decision [the language quoted above] was an affirmation of the Memorandum

Decision of the Honorable Dennis L. Reiling, District Magistrate Judge, of August 1, 2003, entering Judgment for the surviving spouse, Margaret Pritchard, against the Administrator, Ronald Schulteis and his attorney Thomas G. Neff, in the amount of Sixty Eight Thousand Dollars ($68,000.00), joint and several, less the funds remaining in the estate, plus attorney fees of Three Thousand Four Hundred Dollars ($3,400.00), for Margaret Pritchard's attorney, Thomas Odell Rost. Further that any and all expenses paid by the Administrator shall be treated as damages in favor of the surviving spouse, included in the $68,000.00 judgment, and not as an offset against the Judgment."

In this case, it is clear there was no agreement between Schulteis, Neff, and Margaret or her counsel for payment of her attorney fees.

The only statutory references to attorney fees in the Probate Code are not applicable to our situation. K.S.A. 59-104(d) allows assessment of fees as additional court costs where an attorney is appointed by the court. K.S.A. 59-1504 allows attorney fees to an "heir at law or beneficiary under a will who . . . successfully prosecutes or defends any other action for the benefit of the ultimate recipients of the estate" but only where (1) the party is successful in his or her action, (2) the action ultimately benefits the recipients of the estate, and (3) the court exercises its discretion to allow fees. See *In re Estate of Mildrexter*, 25 Kan. App. 2d 834, 838, 971 P.2d 758 (1999). K.S.A. 59-1717 allows compensation to fiduciaries including his or her attorney fees which clearly does not apply to Margaret's counsel. Finally, K.S.A. 59-2214 relates to taxation of "costs" by the court and "costs" relate to the expenses of administering the estate but ordinarily means the fees and charges for the court filing fees, fees for service of process, and the like. See *In re Estate of Gardiner*, 29 Kan. App. 2d 158, 161-62, 23 P.3d 902 (2001).

There is no statutory or contractual basis for allowing the $3,400 fee to Margaret's attorney and such award is reversed.

*Does the failure of Schulteis and Neff to brief or raise as an issue on appeal the district court's order removing Schulteis as administrator and denying Schulteis and Neff compensation and expenses for their services result in these issues being abandoned?*

Schulteis has not raised as issues in this appeal questions relating

to his being removed as administrator. And, the denial of compensation and expenses to Neff and Schulteis has not been raised or argued on appeal in the brief of either Neff or Schulteis. Under our long-time rule "[a]n issue not briefed by the appellant is deemed waived or abandoned." *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 444, 109 P.3d 1146 (2005). Thus, such portions of the courts' below rulings are affirmed.

### *What issues remain to be resolved on remand?*

Based solely on the pleadings currently on file, this matter is returned to the district magistrate judge to determine Margaret's rights under K.S.A. 59-403. Once such rights are determined, the special administrator should proceed as law requires to file a petition for final settlement to conclude administration of the estate.

Based on all the statements and holdings herein, Margaret's motion for assessment of appellate costs and attorney fees on appeal pursuant to Supreme Court Rule 7.07 (2006 Kan. Ct. R. Annot. 57) is denied.

Affirmed in part, reversed in part, and remanded for further action in accordance with the opinion of this court.